# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **JAMES HAYES, DEBERA GRANT, and** ) <br> **HERBERT WHITE,** ) <br> ) <br>       **Plaintiffs,** ) <br> ) <br> **v.** ) <br> ) <br> **DELBERT SERVICES CORPORATION,** ) <br> ) <br>       **Defendant.** ) <br> ) <br> ) | **Civil Action No.: 3:14-cv-258-JAG** |

**AFFIDAVIT OF TAWNY LAWRENCE
IN SUPPORT OF DELBERT SERVICE CORPORATION'S
<u>MOTION TO DISMISS</u>**

TAWNY LAWRENCE, being duly sworn, states the following:

1.      My name is Tawny Lawrence.  I reside in Dewey County, South Dakota.  I am over 21 years old and competent to submit this affidavit.

2.      I am Senior Supervisor for Western Sky Financial, LLC ("Western Sky").  I was hired to work at Western Sky in June 2011 in the position of Accounting Supervisor.  I was promoted to my current position in October 2012.  As such, I have personal knowledge of the facts set forth in this affidavit.

3.      Western Sky is a wholly Tribal Member-owned-and-operated consumer installment lender.  Specifically, it is owned by Martin A. Webb, a member of the Cheyenne River Sioux Tribe (the "CRST" or the "Tribe"), and its offices are located in Eagle Butte and Timber Lake, South Dakota, on the Cheyenne River Indian Reservation (the "Reservation").

4.      Western Sky made loans to borrowers who contacted Western Sky and applied for a Western Sky loan either through Western Sky's website or telephonically.  Once completed,

the application would be submitted for underwriting pursuant to guidelines formulated by Western Sky.  All loan agreements entered into by Western Sky with borrowers are explicitly governed by and subject to the laws of the Tribe.

5.     Western Sky consummated these loans within the boundaries of the Reservation and, pursuant to certain contractual relationships, subsequently sold the loans to WS Funding, LLC, to be serviced by CashCall, Inc. ("CashCall").  Pursuant to a servicing agreement, which was also governed by the laws of the CRST, certain operations functions were outsourced to CashCall.  Whenever CashCall handled intake, for example, the customer would be informed that they were speaking with a CashCall employee on behalf of Western Sky.  This arrangement was necessitated, in part, by infrastructure issues on the Reservation.  However, in all cases, Western Sky set the underwriting criteria by which potential borrowers were reviewed and made the ultimate decision of whether to extend a loan.  The critical final steps to accept loan agreements and fund loans all occurred on the Reservation.  This included a final auditing review, performed after the borrower had completed a loan application by electronically signing a loan agreement, to verify that the information provided by the prospective borrower, such as regarding employment, was accurate and complete.  If the information was not accurate or complete, the agreement would not be accepted and the loan would not be funded.  If the information was satisfactory to Western Sky, Western Sky would notify its bank to fund the loan from one of Western Sky's bank accounts, none of which were located in Virginia.  The borrower would be sent an acceptance notice, informing him or her that the loan proceeds would be electronically disbursed.

6.     A true and correct copy of Plaintiff James Hayes' loan agreement with Western Sky is attached hereto as Exhibit A.

7.      A true and correct copy of Plaintiff Debera Grant's loan agreement with Western Sky is attached hereto as Exhibit B.

8.      A true and correct copy of Plaintiff Herbert White's loan agreement with Western Sky is attached hereto as Exhibit C.

9.      At its peak, Western Sky employed over 100 people, many of whom are members of the CRST, making it one of the largest private employers on the Reservation.   However, recent litigation, of which this suit is but one example, has forced us to suspend our lending operations and lay off the vast majority of our workforce as of September 3, 2013.

10.     These layoffs are especially devastating, both to the terminated employees and to the CRST community at large, because of the dire economic situation that faces the CRST.  The CRST is one of the most poverty-stricken Indian tribes in the United States.   Over 80% of working age Reservation residents are unemployed, and nearly half of all Reservation residents have incomes below the federal poverty line and rely on federal assistance to make ends meet. Western Sky was one of the very few private employers on the Reservation, making gainful employment both fervently sought and extremely difficult to obtain.

11.     The CRST has not yet adopted model business formation legislation, so Western Sky is registered as a South Dakota limited liability company, licensed and operating under the laws of the Tribe. Western Sky's Articles of Organization are filed with the CRST Secretary of the Tribe. True and correct copies of Western Sky's tribal licenses are attached hereto as Exhibit D.

Dated:          Dewey County, South Dakota
                July 28 2014

                                              _____
                                              Tawny Lawrence

Sworn before me this
28 day of July 2014

_____
          Exp.  9/8/16

4

# EXHIBIT A

# WESTERN SKY CONSUMER LOAN AGREEMENT

| Loan No.: | 15432666 | Date of Note: | August 06, 2012 |
|---|---|---|---|
| | | Expected Funding Date: | August 06, 2012 |
| Lender: | Western Sky Financial, LLC | Borrower: | JAMES F HAYES |
| Address: | P.O. Box 370 Timber Lake, SD 57656 | Address: | 1503 PORTER RICHMOND, VA 23224 |

**This Loan Agreement is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation.** By executing this Loan Agreement, you, the borrower, hereby acknowledge and consent to be bound to the terms of this Loan Agreement, consent to the sole subject matter and personal jurisdiction of the Cheyenne River Sioux Tribal Court, and that no other state or federal law or regulation shall apply to this Loan Agreement, its enforcement or interpretation.

You further agree that you have executed the Loan Agreement as if you were physically present within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation; and that this Loan Agreement is fully performed within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation.

In this Loan Agreement, the words "you" and "your" mean the person signing as a borrower. "We," "us," "our," and "Lender" mean Western Sky Financial, LLC, a lender authorized by the laws of the Cheyenne River Sioux Tribal Nation and the Indian Commerce Clause of the Constitution of the United States of America, and any subsequent holder of this Note ("Western Sky").

TRUTH IN LENDING DISCLOSURES: The disclosures below are provided to you so that you may compare the cost of this loan to other loan products you might obtain in the United States. Our inclusion of these disclosures does not mean that we consent to application of state or federal law to us, to the loan, or this Loan Agreement.

## TRUTH IN LENDING ACT DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you | The amount you will have paid after all payments are made as scheduled |
| 139.12 % | $11,568.12 | $2,525.00 | $14,093.12 |

| PAYMENT SCHEDULE |
|---|
| One payment of $253.50 on September 01, 2012. |

47 monthly payments of $294.46 beginning on October 01, 2012.

**Late Charge:**   If a payment is more than 15 days late, you will be charged $29.00.

**Prepayment:**   If you pay off this loan early, you will not have to pay any penalty.

Please see the remainder of this document for additional information about nonpayment, default and any required repayment in full before the scheduled date.

| ITEMIZATION OF AMOUNT FINANCED | |
|---|---|
| Amount Financed: | $2,525.00 |
| Amount Paid to Borrower Directly: | $2,525.00 |
| Prepaid Finance Charge/Origination Fee: | $75.00 |

You promise to pay to the order of Western Sky or any subsequent holder of this Note the sum of **$2,600.00**, together with interest calculated at **135.00 %** per annum and any outstanding charges or late fees, until the full amount of this Note is paid. You promise to repay this loan by making, at a minimum, the payments described on the payment schedule listed above.

Payments will be applied first to any outstanding charges or late fees, then to earned interest and finally to principal. The payment schedule described above may change in the event you do not make all payments as scheduled or in the event you accrue any fees.

Interest is calculated on a 360/360 simple interest basis. This means that interest is calculated by dividing the annual Interest Rate by 360, multiplying that number by the outstanding principal balance, and multiplying that number by the number of days the principal balance is outstanding, assuming that each full month is comprised of 30 days.

You may prepay all or any part of the principal without penalty.

If you fail to make any payment due hereunder, the holder of this Note shall have the right, after a 30-day grace period, to declare this note to be immediately due and payable. If you file for an assignment for the benefit of creditors, or for bankruptcy, the holder of this Note shall have the right to declare this Note to be immediately due and payable.

Except as may be provided in the "Arbitration" section of this Note, if we are required to employ an attorney at law to collect any amounts due hereunder, you will be required to pay the reasonable fees of such attorney to protect our interest or to take any other action required to collect the amounts due hereunder.

The Prepaid Finance Charge disclosed above is fully earned upon loan origination and is not subject to rebate upon prepayment or acceleration of this Note.

**LATE FEES.** You will be subject to a late fee of $29.00 if you fail to make your payment within 15 days of the due date. We can collect any late fees immediately via Electronic Funds Transfer (EFT) from your bank account.

**INSUFFICIENT FUNDS.** You will be subject to a fee of $29.00 if any payment you make is returned by your bank for insufficient funds.

**E-SIGN/ELECTRONIC COMMUNICATIONS.** Although federal law does not apply to this Agreement, this Note is in original format an electronic document fully compliant with the Electronic Signatures in Global and National Commerce Act (E-SIGN) and other applicable laws and regulations, and the one, true original Note is retained electronically by us. All other versions hereof, whether electronic or in tangible format, constitute facsimiles or reproductions only. You understand that you have previously consented to receive all communications from us, including but not limited to all required disclosures, electronically.

**CREDIT REPORTS.** You agree that we may obtain credit reports on you on an ongoing basis as long as this loan remains in effect. You also authorize us to report information concerning this account to credit bureaus and anyone else we believe in good faith has a legitimate need for such information. Late payments, missed payments, or other defaults on this account may be reflected in your credit report.

**CALL MONITORING/RECORDING.** You understand that, from time to time, we may monitor or record telephone calls between us for quality assurance purposes. You expressly consent to have your calls monitored or recorded.

**TELEPHONE CALLS.** You hereby agree that in the event we need to contact you to discuss your account or the repayment of your loan, we may telephone you at any number, including any cell phone number provided, and that we may leave an autodialed or prerecorded message or use other technology to make that contact or to communicate to you the status of your account.

**VERIFICATION.** You authorize us to verify all of the information you have provided in obtaining approval of this Loan.

**GOVERNING LAW.** This Agreement is governed by the Indian Commerce Clause of the Constitution of the United States of America and the laws of the Cheyenne River Sioux Tribe. We do not have a presence in South Dakota or any other states of the United States. Neither this Agreement nor Lender is subject to the laws of any state of the United States of America. By executing this Agreement, you hereby expressly agree that this Agreement is executed and performed solely within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation. You also expressly agree that this Agreement shall be subject to and construed in accordance only with the provisions of the laws of the Cheyenne River Sioux Tribe, and that no United States state or federal law applies to this Agreement. You agree that by entering into this Agreement you are voluntarily availing yourself of the laws of the Cheyenne River Sioux Tribe, a sovereign Native American Tribal Nation, and that your execution of this Agreement is made as if you were physically present within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation.

**ASSIGNMENT.** We may assign or transfer this Loan Agreement or any of our rights under it at any time to any party.

**WAIVER OF JURY TRIAL AND ARBITRATION.**

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.** Unless you exercise your right to opt-out of arbitration in the manner described below, any dispute you have with Western Sky or anyone else under this loan agreement will be resolved by binding arbitration. Arbitration replaces the right to go to court, including the right to have a jury, to engage in discovery (except as may be provided in the arbitration rules), and to participate in a class action or similar proceeding. In Arbitration, a dispute is resolved by an arbitrator instead of a judge or jury. Arbitration procedures are simpler and more limited than court procedures. Any Arbitration will be limited to the dispute between yourself and the holder of the Note and will not be part of a class-

wide or consolidated Arbitration proceeding.

**Agreement to Arbitrate.** You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement.

**Arbitration Defined.** Arbitration is a means of having an independent third party resolve a Dispute. A "Dispute" is any controversy or claim between you and Western Sky or the holder or servicer of the Note. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of this Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim based upon marketing or solicitations to obtain the loan and the handling or servicing of my account whether such Dispute is based on a tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement. For purposes of this Arbitration agreement, the term "the holder" shall include Western Sky or the then-current note holder's employees, officers, directors, attorneys, affiliated companies, predecessors, and assigns, as well as any marketing, servicing, and collection representatives and agents.

**Choice of Arbitrator.** Any party to a dispute, including a Holder or its related third parties, may send the other party written notice by certified mail return receipt requested at the address appearing at the top of this Agreement of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) http://www.adr.org; JAMS (1-800-352-5267) http://www.jamsadr.com; or an arbitration organization agreed upon by you and the other parties to the Dispute. The arbitration will be governed by the chosen arbitration organization's rules and procedures applicable to consumer disputes, to the extent that those rules and procedures do not contradict either the law of the Cheyenne River Sioux Tribe or the express terms of this Agreement to Arbitrate, including the limitations on the Arbitrator below. The party receiving notice of Arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. You understand that if you demand Arbitration, you must inform us of your demand and of the arbitration organization you have selected. You also understand that if you fail to notify us, then we have the right to select the arbitration organization. Any arbitration under this Agreement may be conducted either on tribal land or within thirty miles of your residence, at your choice, provided that this accommodation for you shall not be construed in any way (a) as a relinquishment or waiver of the Cheyenne River Sioux Tribe's sovereign status or immunity, or (b) to allow for the application of any law other than the law of the Cheyenne River Sioux Tribe of Indians to this Agreement.

**Cost of Arbitration.** We will pay the filing fee and any costs or fees charged by the arbitrator regardless of which party initiates the Arbitration. Except where otherwise provided by the law of the Cheyenne River Sioux Tribal Nation, each party will be responsible for its own attorneys' fees and other expenses. Unless prohibited by law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the Arbitration.

**Waiver of Rights.** YOU HEREBY AGREE THAT YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL, TO HAVE A COURT DECIDE YOUR DISPUTE, TO PARTICIPATE IN A CLASS ACTION LAWSUIT, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT ARE AVAILABLE IN A LAWSUIT. The arbitrator has the ability to award all remedies available by statute, at law, or in equity to the prevailing party, except that the parties agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving the individual disputes between the parties. The validity, effect, and enforceability of this waiver of class action lawsuit and class-wide

Arbitration is to be determined solely by a court of competent jurisdiction located within the Cheyenne Rivers Sioux Tribal Nation, and not by the arbitrator. If the court refuses to enforce the class-wide Arbitration waiver, or if the arbitrator fails or refuses to enforce the waiver of class-wide Arbitration, the parties agree that the Dispute will proceed in tribal court and will be decided by a tribal court judge, sitting without a jury, under applicable court rules and procedures.

**Applicable Law and Judicial Review.** THIS ARBITRATION PROVISION IS MADE PURSUANT TO A TRANSACTION INVOLVING THE INDIAN COMMERCE CLAUSE OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA, AND SHALL BE GOVERNED BY THE LAW OF THE CHEYENNE RIVER SIOUX TRIBE. The arbitrator will apply the laws of the Cheyenne River Sioux Tribal Nation and the terms of this Agreement. The arbitrator must apply the terms of this Arbitration agreement, including without limitation the waiver of class-wide Arbitration. The arbitrator will make written findings and the arbitrator's award may be filed in the Cheyenne River Sioux Tribal Court, which has jurisdiction in this matter. The Arbitration award will be supported by substantial evidence and must be consistent with this Agreement and applicable law or may be set aside by a court upon judicial review.

**Small Claims Exception.** All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal in the Cheyenne River Sioux Tribal Small Claims Court for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration.

**Other Provisions.** This Arbitration provision will survive: (i) termination or changes in this Agreement, the Account, or the relationship between us concerning the Account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of my Note, or any amounts owed on my account, to any other person or entity. This Arbitration provision benefits and is binding upon you, your respective heirs, successors and assigns. It also benefits and is binding upon us, our successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration, or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any of this Arbitration Provision is held invalid, the remainder shall remain in effect

**Right to Opt Out.** If you do not wish your account to be subject to this Arbitration Agreement, you must advise us in writing at P.O. Box 370, Timber Lake, South Dakota, 57565, or via e-mail at info@westernsky.com. You must clearly print or type your name and account number and state that you reject Arbitration. You must give written notice; it is not sufficient to telephone us. We must receive your letter or e-mail within sixty (60) days after the date your loan funds or your rejection of Arbitration will not be effective. In the event you opt out of Arbitration, any disputes hereunder shall nonetheless be governed under the laws of the Cheyenne River Sioux Tribal Nation.

**Payments.** You have previously authorized and requested us to initiate an automated clearinghouse or other electronic funds transfer ("EFT") from the bank account identified on your Application (the "Bank Account") to make each payment required hereunder on the day it is due. You also authorize us to initiate an EFT to or from the Bank Account to correct any erroneous payment and, in the event any EFT is unsuccessful, to attempt such payment up to two additional times. You understand that unsuccessful EFTs may result in charges by your bank, and you agree that we are not liable for such charges. We will notify you 10 days prior to any given transfer if the amount to be transferred varies by more than $50 from your regular payment amount. You also authorize us to withdraw funds from your account on additional days throughout the month in the event you are delinquent on your loan payments. Your request and authorization for us to initiate EFTs is entirely voluntary, and you may terminate this authorization by notifying us in writing via fax (866-347-0666) or email (customer.service@westernsky.com) soon enough to allow us a

reasonable opportunity to act on your termination (generally at least three business days in advance).

**THIS LOAN CARRIES A VERY HIGH INTEREST RATE. YOU MAY BE ABLE TO OBTAIN CREDIT UNDER MORE FAVORABLE TERMS ELSEWHERE. EVEN THOUGH THE TERM OF THE LOAN IS 48 MONTHS, WE STRONGLY ENCOURAGE YOU TO PAY OFF THE LOAN AS SOON AS POSSIBLE. YOU HAVE THE RIGHT TO PAY OFF ALL OR ANY PORTION OF THE LOAN AT ANY TIME WITHOUT INCURRING ANY PENALTY. YOU WILL, HOWEVER, BE REQUIRED TO PAY ANY AND ALL INTEREST THAT HAS ACCRUED FROM THE FUNDING DATE UNTIL THE PAYOFF DATE.**

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS AGREEMENT BEFORE YOU SIGN IT. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.



| ☑ | YOU HAVE READ AND UNDERSTAND THE ARBITRATION SECTION OF THIS NOTE AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THAT SECTION. |
|---|---|
| ☑ | **YOU HAVE READ ALL OF THE TERMS AND CONDITIONS OF THIS PROMISSORY NOTE AND DISCLOSURE STATEMENT AND AGREE TO BE BOUND THERETO. YOU UNDERSTAND AND AGREE THAT YOUR EXECUTION OF THIS NOTE SHALL HAVE THE SAME LEGAL FORCE AND EFFECT AS A PAPER CONTRACT.** |

**CONSUMER COMPLAINTS** - If you have a complaint about our loan, please let us know. You can contact us at P.O. Box 370, Timber Lake, South Dakota, 57656, telephone (877) 860-2274.

Click here to print out a copy of this document for your records.

# EXHIBIT B

# WESTERN SKY CONSUMER LOAN AGREEMENT

| Loan No.: | 17047576 | Date of Note: | August 18, 2012 |
|---|---|---|---|
| | | Expected Funding Date: | August 20, 2012 |
| Lender: | Western Sky Financial, LLC | Borrower: | DEBERA G CLARKE |
| Address: | P.O. Box 370<br>Timber Lake, SD 57656 | Address: | 10109 WALTHMAN DR<br>RICHMOND, VA 23238 |

**This Loan Agreement is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation.** By executing this Loan Agreement, you, the borrower, hereby acknowledge and consent to be bound to the terms of this Loan Agreement, consent to the sole subject matter and personal jurisdiction of the Cheyenne River Sioux Tribal Court, and that no other state or federal law or regulation shall apply to this Loan Agreement, its enforcement or interpretation.

You further agree that you have executed the Loan Agreement as if you were physically present within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation; and that this Loan Agreement is fully performed within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation.

In this Loan Agreement, the words "you" and "your" mean the person signing as a borrower. "We," "us," "our," and "Lender" mean Western Sky Financial, LLC, a lender authorized by the laws of the Cheyenne River Sioux Tribal Nation and the Indian Commerce Clause of the Constitution of the United States of America, and any subsequent holder of this Note ("Western Sky").

TRUTH IN LENDING DISCLOSURES: The disclosures below are provided to you so that you may compare the cost of this loan to other loan products you might obtain in the United States. Our inclusion of these disclosures does not mean that we consent to application of state or federal law to us, to the loan, or this Loan Agreement.

## TRUTH IN LENDING ACT DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE<br><br>*The cost of your credit as a yearly rate* | FINANCE CHARGE<br><br>*The dollar amount the credit will cost you* | AMOUNT FINANCED<br><br>*The amount of credit provided to you* | TOTAL OF PAYMENTS<br><br>*The amount you will have paid after all payments are made as scheduled* |
|---|---|---|---|
| **139.13 %** | **$11,431.62** | **$2,525.00** | **$13,956.62** |

| PAYMENT SCHEDULE |
|---|
| One payment of $117.00 on September 01, 2012. |

47 monthly payments of $294.46 beginning on October 01, 2012.

**Late Charge:**   If a payment is more than 15 days late, you will be charged $29.00.

**Prepayment:**   If you pay off this loan early, you will not have to pay any penalty.

Please see the remainder of this document for additional information about nonpayment, default and any required repayment in full before the scheduled date.

| ITEMIZATION OF AMOUNT FINANCED | |
|---|---|
| Amount Financed: | $2,525.00 |
| Amount Paid to Borrower Directly: | $2,525.00 |
| Prepaid Finance Charge/Origination Fee: | $75.00 |

You promise to pay to the order of Western Sky or any subsequent holder of this Note the sum of **$2,600.00**, together with interest calculated at **135.00 %** per annum and any outstanding charges or late fees, until the full amount of this Note is paid. You promise to repay this loan by making, at a minimum, the payments described on the payment schedule listed above.

Payments will be applied first to any outstanding charges or late fees, then to earned interest and finally to principal. The payment schedule described above may change in the event you do not make all payments as scheduled or in the event you accrue any fees.

Interest is calculated on a 360/360 simple interest basis. This means that interest is calculated by dividing the annual Interest Rate by 360, multiplying that number by the outstanding principal balance, and multiplying that number by the number of days the principal balance is outstanding, assuming that each full month is comprised of 30 days.

You may prepay all or any part of the principal without penalty.

If you fail to make any payment due hereunder, the holder of this Note shall have the right, after a 30-day grace period, to declare this note to be immediately due and payable. If you file for an assignment for the benefit of creditors, or for bankruptcy, the holder of this Note shall have the right to declare this Note to be immediately due and payable.

Except as may be provided in the "Arbitration" section of this Note, if we are required to employ an attorney at law to collect any amounts due hereunder, you will be required to pay the reasonable fees of such attorney to protect our interest or to take any other action required to collect the amounts due hereunder.

The Prepaid Finance Charge disclosed above is fully earned upon loan origination and is not subject to rebate upon prepayment or acceleration of this Note.

**LATE FEES.** You will be subject to a late fee of $29.00 if you fail to make your payment within 15 days of the due date. We can collect any late fees immediately via Electronic Funds Transfer (EFT) from your bank account.

**INSUFFICIENT FUNDS.** You will be subject to a fee of $29.00 if any payment you make is returned by your bank for insufficient funds.

**E-SIGN/ELECTRONIC COMMUNICATIONS.** Although federal law does not apply to this Agreement, this Note is in original format an electronic document fully compliant with the Electronic Signatures in Global and National Commerce Act (E-SIGN) and other applicable laws and regulations, and the one, true original Note is retained electronically by us. All other versions hereof, whether electronic or in tangible format, constitute facsimiles or reproductions only. You understand that you have previously consented to receive all communications from us, including but not limited to all required disclosures, electronically.

**CREDIT REPORTS.** You agree that we may obtain credit reports on you on an ongoing basis as long as this loan remains in effect. You also authorize us to report information concerning this account to credit bureaus and anyone else we believe in good faith has a legitimate need for such information. Late payments, missed payments, or other defaults on this account may be reflected in your credit report.

**CALL MONITORING/RECORDING.** You understand that, from time to time, we may monitor or record telephone calls between us for quality assurance purposes. You expressly consent to have your calls monitored or recorded.

**TELEPHONE CALLS.** You hereby agree that in the event we need to contact you to discuss your account or the repayment of your loan, we may telephone you at any number, including any cell phone number provided, and that we may leave an autodialed or prerecorded message or use other technology to make that contact or to communicate to you the status of your account.

**VERIFICATION.** You authorize us to verify all of the information you have provided in obtaining approval of this Loan.

**GOVERNING LAW.** This Agreement is governed by the Indian Commerce Clause of the Constitution of the United States of America and the laws of the Cheyenne River Sioux Tribe. We do not have a presence in South Dakota or any other states of the United States. Neither this Agreement nor Lender is subject to the laws of any state of the United States of America. By executing this Agreement, you hereby expressly agree that this Agreement is executed and performed solely within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation. You also expressly agree that this Agreement shall be subject to and construed in accordance only with the provisions of the laws of the Cheyenne River Sioux Tribe, and that no United States state or federal law applies to this Agreement. You agree that by entering into this Agreement you are voluntarily availing yourself of the laws of the Cheyenne River Sioux Tribe, a sovereign Native American Tribal Nation, and that your execution of this Agreement is made as if you were physically present within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation.

**ASSIGNMENT.** We may assign or transfer this Loan Agreement or any of our rights under it at any time to any party.

**WAIVER OF JURY TRIAL AND ARBITRATION.**

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.** Unless you exercise your right to opt-out of arbitration in the manner described below, any dispute you have with Western Sky or anyone else under this loan agreement will be resolved by binding arbitration. Arbitration replaces the right to go to court, including the right to have a jury, to engage in discovery (except as may be provided in the arbitration rules), and to participate in a class action or similar proceeding. In Arbitration, a dispute is resolved by an arbitrator instead of a judge or jury. Arbitration procedures are simpler and more limited than court procedures. Any Arbitration will be limited to the dispute between yourself and the holder of the Note and will not be part of a class-

wide or consolidated Arbitration proceeding.

**Agreement to Arbitrate.** You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement.

**Arbitration Defined.** Arbitration is a means of having an independent third party resolve a Dispute. A "Dispute" is any controversy or claim between you and Western Sky or the holder or servicer of the Note. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of this Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim based upon marketing or solicitations to obtain the loan and the handling or servicing of my account whether such Dispute is based on a tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement. For purposes of this Arbitration agreement, the term "the holder" shall include Western Sky or the then-current note holder's employees, officers, directors, attorneys, affiliated companies, predecessors, and assigns, as well as any marketing, servicing, and collection representatives and agents.

**Choice of Arbitrator.** Any party to a dispute, including a Holder or its related third parties, may send the other party written notice by certified mail return receipt requested at the address appearing at the top of this Agreement of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) http://www.adr.org; JAMS (1-800-352-5267) http://www.jamsadr.com; or an arbitration organization agreed upon by you and the other parties to the Dispute. The arbitration will be governed by the chosen arbitration organization's rules and procedures applicable to consumer disputes, to the extent that those rules and procedures do not contradict either the law of the Cheyenne River Sioux Tribe or the express terms of this Agreement to Arbitrate, including the limitations on the Arbitrator below. The party receiving notice of Arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. You understand that if you demand Arbitration, you must inform us of your demand and of the arbitration organization you have selected. You also understand that if you fail to notify us, then we have the right to select the arbitration organization. Any arbitration under this Agreement may be conducted either on tribal land or within thirty miles of your residence, at your choice, provided that this accommodation for you shall not be construed in any way (a) as a relinquishment or waiver of the Cheyenne River Sioux Tribe's sovereign status or immunity, or (b) to allow for the application of any law other than the law of the Cheyenne River Sioux Tribe of Indians to this Agreement.

**Cost of Arbitration.** We will pay the filing fee and any costs or fees charged by the arbitrator regardless of which party initiates the Arbitration. Except where otherwise provided by the law of the Cheyenne River Sioux Tribal Nation, each party will be responsible for its own attorneys' fees and other expenses. Unless prohibited by law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the Arbitration.

**Waiver of Rights.** YOU HEREBY AGREE THAT YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL, TO HAVE A COURT DECIDE YOUR DISPUTE, TO PARTICIPATE IN A CLASS ACTION LAWSUIT, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT ARE AVAILABLE IN A LAWSUIT. The arbitrator has the ability to award all remedies available by statute, at law, or in equity to the prevailing party, except that the parties agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving the individual disputes between the parties. The validity, effect, and enforceability of this waiver of class action lawsuit and class-wide

Arbitration is to be determined solely by a court of competent jurisdiction located within the Cheyenne Rivers Sioux Tribal Nation, and not by the arbitrator. If the court refuses to enforce the class-wide Arbitration waiver, or if the arbitrator fails or refuses to enforce the waiver of class-wide Arbitration, the parties agree that the Dispute will proceed in tribal court and will be decided by a tribal court judge, sitting without a jury, under applicable court rules and procedures.

**Applicable Law and Judicial Review.** THIS ARBITRATION PROVISION IS MADE PURSUANT TO A TRANSACTION INVOLVING THE INDIAN COMMERCE CLAUSE OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA, AND SHALL BE GOVERNED BY THE LAW OF THE CHEYENNE RIVER SIOUX TRIBE. The arbitrator will apply the laws of the Cheyenne River Sioux Tribal Nation and the terms of this Agreement. The arbitrator must apply the terms of this Arbitration agreement, including without limitation the waiver of class-wide Arbitration. The arbitrator will make written findings and the arbitrator's award may be filed in the Cheyenne River Sioux Tribal Court, which has jurisdiction in this matter. The Arbitration award will be supported by substantial evidence and must be consistent with this Agreement and applicable law or may be set aside by a court upon judicial review.

**Small Claims Exception.** All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal in the Cheyenne River Sioux Tribal Small Claims Court for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration.

**Other Provisions.** This Arbitration provision will survive: (i) termination or changes in this Agreement, the Account, or the relationship between us concerning the Account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of my Note, or any amounts owed on my account, to any other person or entity. This Arbitration provision benefits and is binding upon you, your respective heirs, successors and assigns. It also benefits and is binding upon us, our successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration, or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any of this Arbitration Provision is held invalid, the remainder shall remain in effect

**Right to Opt Out.** If you do not wish your account to be subject to this Arbitration Agreement, you must advise us in writing at P.O. Box 370, Timber Lake, South Dakota, 57565, or via e-mail at info@westernsky.com. You must clearly print or type your name and account number and state that you reject Arbitration. You must give written notice; it is not sufficient to telephone us. We must receive your letter or e-mail within sixty (60) days after the date your loan funds or your rejection of Arbitration will not be effective. In the event you opt out of Arbitration, any disputes hereunder shall nonetheless be governed under the laws of the Cheyenne River Sioux Tribal Nation.

**Payments.** You have previously authorized and requested us to initiate an automated clearinghouse or other electronic funds transfer ("EFT") from the bank account identified on your Application (the "Bank Account") to make each payment required hereunder on the day it is due. You also authorize us to initiate an EFT to or from the Bank Account to correct any erroneous payment and, in the event any EFT is unsuccessful, to attempt such payment up to two additional times. You understand that unsuccessful EFTs may result in charges by your bank, and you agree that we are not liable for such charges. We will notify you 10 days prior to any given transfer if the amount to be transferred varies by more than $50 from your regular payment amount. You also authorize us to withdraw funds from your account on additional days throughout the month in the event you are delinquent on your loan payments. Your request and authorization for us to initiate EFTs is entirely voluntary, and you may terminate this authorization by notifying us in writing via fax (866-347-0666) or email (customer.service@westernsky.com) soon enough to allow us a

reasonable opportunity to act on your termination (generally at least three business days in advance).

**THIS LOAN CARRIES A VERY HIGH INTEREST RATE. YOU MAY BE ABLE TO OBTAIN CREDIT UNDER MORE FAVORABLE TERMS ELSEWHERE. EVEN THOUGH THE TERM OF THE LOAN IS 48 MONTHS, WE STRONGLY ENCOURAGE YOU TO PAY OFF THE LOAN AS SOON AS POSSIBLE. YOU HAVE THE RIGHT TO PAY OFF ALL OR ANY PORTION OF THE LOAN AT ANY TIME WITHOUT INCURRING ANY PENALTY. YOU WILL, HOWEVER, BE REQUIRED TO PAY ANY AND ALL INTEREST THAT HAS ACCRUED FROM THE FUNDING DATE UNTIL THE PAYOFF DATE.**

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS AGREEMENT BEFORE YOU SIGN IT. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.



| ☑ | YOU HAVE READ AND UNDERSTAND THE ARBITRATION SECTION OF THIS NOTE AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THAT SECTION. |
|---|---|
| ☑ | **YOU HAVE READ ALL OF THE TERMS AND CONDITIONS OF THIS PROMISSORY NOTE AND DISCLOSURE STATEMENT AND AGREE TO BE BOUND THERETO. YOU UNDERSTAND AND AGREE THAT YOUR EXECUTION OF THIS NOTE SHALL HAVE THE SAME LEGAL FORCE AND EFFECT AS A PAPER CONTRACT.** |

**CONSUMER COMPLAINTS** - If you have a complaint about our loan, please let us know. You can contact us at P.O. Box 370, Timber Lake, South Dakota, 57656, telephone (877) 860-2274.

Click here to print out a copy of this document for your records.

# EXHIBIT C

## WESTERN SKY CONSUMER LOAN AGREEMENT

| Loan No.: | 23266079 | Date of Note: | November 20, 2012 |
|---|---|---|---|
| | | Expected Funding Date: | November 21, 2012 |
| Lender: | Western Sky Financial, LLC | Borrower: | HERBERT L WHITE JR |
| Address: | P.O. Box 370<br>Timber Lake, SD 57656 | Address: | 12205 Pender Creek Cir<br>Fairfax, VA 22033 |

**This Loan Agreement is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation.** By executing this Loan Agreement, you, the borrower, hereby acknowledge and consent to be bound to the terms of this Loan Agreement, consent to the sole subject matter and personal jurisdiction of the Cheyenne River Sioux Tribal Court, and that no other state or federal law or regulation shall apply to this Loan Agreement, its enforcement or interpretation.

You further agree that you have executed the Loan Agreement as if you were physically present within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation; and that this Loan Agreement is fully performed within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation.

In this Loan Agreement, the words "you" and "your" mean the person signing as a borrower. "We," "us," "our," and "Lender" mean Western Sky Financial, LLC, a lender authorized by the laws of the Cheyenne River Sioux Tribal Nation and the Indian Commerce Clause of the Constitution of the United States of America, and any subsequent holder of this Note ("Western Sky").

TRUTH IN LENDING DISCLOSURES: The disclosures below are provided to you so that you may compare the cost of this loan to other loan products you might obtain in the United States. Our inclusion of these disclosures does not mean that we consent to application of state or federal law to us, to the loan, or this Loan Agreement.

### TRUTH IN LENDING ACT DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE<br><br>*The cost of your credit as a yearly rate* | FINANCE CHARGE<br><br>*The dollar amount the credit will cost you* | AMOUNT FINANCED<br><br>*The amount of credit provided to you* | TOTAL OF PAYMENTS<br><br>*The amount you will have paid after all payments are made as scheduled* |
|---|---|---|---|
| **233.84 %** | **$3,818.64** | **$1,000.00** | **$4,818.64** |

| PAYMENT SCHEDULE |
|---|
| One payment of $62.08 on December 01, 2012. |

24 monthly payments of $198.19 beginning on January 01, 2013.

**Late Charge:**   If a payment is more than 15 days late, you will be charged $29.00.

**Prepayment:**   If you pay off this loan early, you will not have to pay any penalty.

Please see the remainder of this document for additional information about nonpayment, default and any required repayment in full before the scheduled date.

| ITEMIZATION OF AMOUNT FINANCED | |
| --- | --- |
| Amount Financed: | $1,000.00 |
| Amount Paid to Borrower Directly: | $1,000.00 |
| Prepaid Finance Charge/Origination Fee: | $500.00 |

You promise to pay to the order of Western Sky or any subsequent holder of this Note the sum of **$1,500.00**, together with interest calculated at **149.00 %** per annum and any outstanding charges or late fees, until the full amount of this Note is paid. You promise to repay this loan by making, at a minimum, the payments described on the payment schedule listed above.

Payments will be applied first to any outstanding charges or late fees, then to earned interest and finally to principal. The payment schedule described above may change in the event you do not make all payments as scheduled or in the event you accrue any fees.

Interest is calculated on a 360/360 simple interest basis. This means that interest is calculated by dividing the annual Interest Rate by 360, multiplying that number by the outstanding principal balance, and multiplying that number by the number of days the principal balance is outstanding, assuming that each full month is comprised of 30 days.

You may prepay all or any part of the principal without penalty.

If you fail to make any payment due hereunder, the holder of this Note shall have the right, after a 30-day grace period, to declare this note to be immediately due and payable. If you file for an assignment for the benefit of creditors, or for bankruptcy, the holder of this Note shall have the right to declare this Note to be immediately due and payable.

Except as may be provided in the "Arbitration" section of this Note, if we are required to employ an attorney at law to collect any amounts due hereunder, you will be required to pay the reasonable fees of such attorney to protect our interest or to take any other action required to collect the amounts due hereunder.

The Prepaid Finance Charge disclosed above is fully earned upon loan origination and is not subject to rebate upon prepayment or acceleration of this Note.

**LATE FEES.** You will be subject to a late fee of $29.00 if you fail to make your payment within 15 days of the due date. We can collect any late fees immediately via Electronic Funds Transfer (EFT) from your bank account.

**INSUFFICIENT FUNDS.** You will be subject to a fee of $29.00 if any payment you make is returned by your bank for insufficient funds.

**E-SIGN/ELECTRONIC COMMUNICATIONS.** Although federal law does not apply to this Agreement, this Note is in original format an electronic document fully compliant with the Electronic Signatures in Global and National Commerce Act (E-SIGN) and other applicable laws and regulations, and the one, true original Note is retained electronically by us. All other versions hereof, whether electronic or in tangible format, constitute facsimiles or reproductions only. You understand that you have previously consented to receive all communications from us, including but not limited to all required disclosures, electronically.

**CREDIT REPORTS.** You agree that we may obtain credit reports on you on an ongoing basis as long as this loan remains in effect. You also authorize us to report information concerning this account to credit bureaus and anyone else we believe in good faith has a legitimate need for such information. Late payments, missed payments, or other defaults on this account may be reflected in your credit report.

**CALL MONITORING/RECORDING.** You understand that, from time to time, we may monitor or record telephone calls between us for quality assurance purposes. You expressly consent to have your calls monitored or recorded.

**TELEPHONE CALLS.** You hereby agree that in the event we need to contact you to discuss your account or the repayment of your loan, we may telephone you at any number, including any cell phone number provided, and that we may leave an autodialed or prerecorded message or use other technology to make that contact or to communicate to you the status of your account.

**VERIFICATION.** You authorize us to verify all of the information you have provided in obtaining approval of this Loan.

**GOVERNING LAW.** This Agreement is governed by the Indian Commerce Clause of the Constitution of the United States of America and the laws of the Cheyenne River Sioux Tribe. We do not have a presence in South Dakota or any other states of the United States. Neither this Agreement nor Lender is subject to the laws of any state of the United States of America. By executing this Agreement, you hereby expressly agree that this Agreement is executed and performed solely within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation. You also expressly agree that this Agreement shall be subject to and construed in accordance only with the provisions of the laws of the Cheyenne River Sioux Tribe, and that no United States state or federal law applies to this Agreement. You agree that by entering into this Agreement you are voluntarily availing yourself of the laws of the Cheyenne River Sioux Tribe, a sovereign Native American Tribal Nation, and that your execution of this Agreement is made as if you were physically present within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation.

**ASSIGNMENT.** We may assign or transfer this Loan Agreement or any of our rights under it at any time to any party.

**WAIVER OF JURY TRIAL AND ARBITRATION.**

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.** Unless you exercise your right to opt-out of arbitration in the manner described below, any dispute you have with Western Sky or anyone else under this loan agreement will be resolved by binding arbitration. Arbitration replaces the right to go to court, including the right to have a jury, to engage in discovery (except as may be provided in the arbitration rules), and to participate in a class action or similar proceeding. In Arbitration, a dispute is resolved by an arbitrator instead of a judge or jury. Arbitration procedures are simpler and more limited than court procedures. Any Arbitration will be limited to the dispute between yourself and the holder of the Note and will not be part of a class-

wide or consolidated Arbitration proceeding.

**Agreement to Arbitrate.** You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement.

**Arbitration Defined.** Arbitration is a means of having an independent third party resolve a Dispute. A "Dispute" is any controversy or claim between you and Western Sky or the holder or servicer of the Note. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of this Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim based upon marketing or solicitations to obtain the loan and the handling or servicing of my account whether such Dispute is based on a tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement. For purposes of this Arbitration agreement, the term "the holder" shall include Western Sky or the then-current note holder's employees, officers, directors, attorneys, affiliated companies, predecessors, and assigns, as well as any marketing, servicing, and collection representatives and agents.

**Choice of Arbitrator.** Any party to a dispute, including a Holder or its related third parties, may send the other party written notice by certified mail return receipt requested at the address appearing at the top of this Agreement of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) http://www.adr.org; JAMS (1-800-352-5267) http://www.jamsadr.com; or an arbitration organization agreed upon by you and the other parties to the Dispute. The arbitration will be governed by the chosen arbitration organization's rules and procedures applicable to consumer disputes, to the extent that those rules and procedures do not contradict either the law of the Cheyenne River Sioux Tribe or the express terms of this Agreement to Arbitrate, including the limitations on the Arbitrator below. The party receiving notice of Arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. You understand that if you demand Arbitration, you must inform us of your demand and of the arbitration organization you have selected. You also understand that if you fail to notify us, then we have the right to select the arbitration organization. Any arbitration under this Agreement may be conducted either on tribal land or within thirty miles of your residence, at your choice, provided that this accommodation for you shall not be construed in any way (a) as a relinquishment or waiver of the Cheyenne River Sioux Tribe's sovereign status or immunity, or (b) to allow for the application of any law other than the law of the Cheyenne River Sioux Tribe of Indians to this Agreement.

**Cost of Arbitration.** We will pay the filing fee and any costs or fees charged by the arbitrator regardless of which party initiates the Arbitration. Except otherwise provided by the law of the Cheyenne River Sioux Tribal Nation, each party will be responsible for its own attorneys' fees and other expenses. Unless prohibited by law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the Arbitration.

**Waiver of Rights.** YOU HEREBY AGREE THAT YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL, TO HAVE A COURT DECIDE YOUR DISPUTE, TO PARTICIPATE IN A CLASS ACTION LAWSUIT, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT ARE AVAILABLE IN A LAWSUIT. The arbitrator has the ability to award all remedies available by statute, at law, or in equity to the prevailing party, except that the parties agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving the individual disputes between the parties. The validity, effect, and enforceability of this waiver of class action lawsuit and class-wide

Arbitration is to be determined solely by a court of competent jurisdiction located within the Cheyenne Rivers Sioux Tribal Nation, and not by the arbitrator. If the court refuses to enforce the class-wide Arbitration waiver, or if the arbitrator fails or refuses to enforce the waiver of class-wide Arbitration, the parties agree that the Dispute will proceed in tribal court and will be decided by a tribal court judge, sitting without a jury, under applicable court rules and procedures.

**Applicable Law and Judicial Review.** THIS ARBITRATION PROVISION IS MADE PURSUANT TO A TRANSACTION INVOLVING THE INDIAN COMMERCE CLAUSE OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA, AND SHALL BE GOVERNED BY THE LAW OF THE CHEYENNE RIVER SIOUX TRIBE. The arbitrator will apply the laws of the Cheyenne River Sioux Tribal Nation and the terms of this Agreement. The arbitrator must apply the terms of this Arbitration agreement, including without limitation the waiver of class-wide Arbitration. The arbitrator will make written findings and the arbitrator's award may be filed in the Cheyenne River Sioux Tribal Court, which has jurisdiction in this matter. The Arbitration award will be supported by substantial evidence and must be consistent with this Agreement and applicable law or may be set aside by a court upon judicial review.

**Small Claims Exception.** All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal in the Cheyenne River Sioux Tribal Small Claims Court for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration.

**Other Provisions.** This Arbitration provision will survive: (i) termination or changes in this Agreement, the Account, or the relationship between us concerning the Account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of my Note, or any amounts owed on my account, to any other person or entity. This Arbitration provision benefits and is binding upon you, your respective heirs, successors and assigns. It also benefits and is binding upon us, our successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration, or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any of this Arbitration Provision is held invalid, the remainder shall remain in effect

**Right to Opt Out.** If you do not wish your account to be subject to this Arbitration Agreement, you must advise us in writing at P.O. Box 370, Timber Lake, South Dakota, 57565, or via e-mail at info@westernsky.com. You must clearly print or type your name and account number and state that you reject Arbitration. You must give written notice; it is not sufficient to telephone us. We must receive your letter or e-mail within sixty (60) days after the date your loan funds or your rejection of Arbitration will not be effective. In the event you opt out of Arbitration, any disputes hereunder shall nonetheless be governed under the laws of the Cheyenne River Sioux Tribal Nation.

**Payments.** You have previously authorized and requested us to initiate an automated clearinghouse or other electronic funds transfer ("EFT") from the bank account identified on your Application (the "Bank Account") to make each payment required hereunder on the day it is due. You also authorize us to initiate an EFT to or from the Bank Account to correct any erroneous payment and, in the event any EFT is unsuccessful, to attempt such payment up to two additional times. You understand that unsuccessful EFTs may result in charges by your bank, and you agree that we are not liable for such charges. We will notify you 10 days prior to any given transfer if the amount to be transferred varies by more than $50 from your regular payment amount. You also authorize us to withdraw funds from your account on additional days throughout the month in the event you are delinquent on your loan payments. Your request and authorization for us to initiate EFTs is entirely voluntary, and you may terminate this authorization by notifying us in writing via fax (866-347-0666) or email (customer.service@westernsky.com) soon enough to allow us a

reasonable opportunity to act on your termination (generally at least three business days in advance).

**THIS LOAN CARRIES A VERY HIGH INTEREST RATE. YOU MAY BE ABLE TO OBTAIN CREDIT UNDER MORE FAVORABLE TERMS ELSEWHERE. EVEN THOUGH THE TERM OF THE LOAN IS 25 MONTHS, WE STRONGLY ENCOURAGE YOU TO PAY OFF THE LOAN AS SOON AS POSSIBLE. YOU HAVE THE RIGHT TO PAY OFF ALL OR ANY PORTION OF THE LOAN AT ANY TIME WITHOUT INCURRING ANY PENALTY. YOU WILL, HOWEVER, BE REQUIRED TO PAY ANY AND ALL INTEREST THAT HAS ACCRUED FROM THE FUNDING DATE UNTIL THE PAYOFF DATE.**

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS AGREEMENT BEFORE YOU SIGN IT. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.



| ☑ | YOU HAVE READ AND UNDERSTAND THE ARBITRATION SECTION OF THIS NOTE AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THAT SECTION. |
| --- | --- |
| ☑ | **YOU HAVE READ ALL OF THE TERMS AND CONDITIONS OF THIS PROMISSORY NOTE AND DISCLOSURE STATEMENT AND AGREE TO BE BOUND THERETO. YOU UNDERSTAND AND AGREE THAT YOUR EXECUTION OF THIS NOTE SHALL HAVE THE SAME LEGAL FORCE AND EFFECT AS A PAPER CONTRACT.** |

**CONSUMER COMPLAINTS** - If you have a complaint about our loan, please let us know. You can contact us at P.O. Box 370, Timber Lake, South Dakota, 57656, telephone (877) 860-2274.

Click here to print out a copy of this document for your records.

# EXHIBIT D



**CHEYENNE RIVER SIOUX TRIBE**
**BUSINESS LICENSE**

Date          5/13/2009

Renewal Date May 2010

Having made proper application. This business license is hereby issued to the person named. This Business License enables this person to transact whatever business or activity specified on application until this Business License expires or is cancelled.

TRIBAL TREASURER

License 292-374
Code    5412

Western Sky Financial, LLC

PO Box 370

Timber Lake          SD          57656

---



**CHEYENNE RIVER SIOUX TRIBE**
**BUSINESS LICENSE**

Date          4/27/2010

Renewal Date May 2011

Having made proper application. This business license is hereby issued to the person named. This Business License enables this person to transact whatever business or activity specified on application until this Business License expires or is cancelled.

TRIBAL TREASURER

License 2102-374
Code    5412

Western Sky Financial, LLC

PO Box 370

Timber Lake          SD          57656

---



**CHEYENNE RIVER SIOUX TRIBE**
**BUSINESS LICENSE**

Date          4/27/2011

Renewal Date          May 2012

Having made proper application. This business license is hereby issued to the person named. This Business License enables this person to transact whatever business or activity specified on application until this Business License expires or is cancelled.

TRIBAL TREASURER

License  2112-374
Code     5412

Western Sky Financial LLC

PO Box 370

Timber Lake          SD     57656



**CHEYENNE RIVER SIOUX TRIBE**
**BUSINESS LICENSE**

Date    4/13/2012

Renewal Date   May 2013

License   2122-374

Code    5412

Having made proper application. This business license is hereby issued to the person named. This Business License enables this person to transact whatever business or activity specified on application until this Business License expires or is cancelled.

Western Sky Financial, LLC

PO Box 370

Timber Lake      SD      57656

_____
**TRIBAL TREASURER**

## CHEYENNE RIVER SIOUX TRIBE
## BUSINESS LICENSE

| Date | 4/16/2013 |
|------|-----------|

| Renewal Date | May 2014 |
|--------------|----------|

License: 2132-374

Code: 5412

Western Sky Financial, LLC

PO Box 370

Timber Lake    SD        57656

Having made proper application. This business license is hereby issued to the person named.  This business license enables this person to transact whatever business or activity specified on the application until this license expires or is cancelled

_____

TRIBAL TREASURER