**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **JAMES HAYES, DEBERA GRANT, and** )<br>**HERBERT WHITE,** )<br> )<br>    **Plaintiffs,** )<br> )<br>**v.** )<br> )<br>**DELBERT SERVICES CORPORATION,** )<br> )<br>    **Defendant.** )<br> )<br>_____ ) | **Civil Action No.: 3:14-cv-258-JAG** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DELBERT SERVICES CORPORATION'S**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT,**
**OR, ALTERNATIVELY, TO COMPEL ARBITRATION**

Julie M. Carpenter
Virginia Bar No. 30421
JENNER & BLOCK LLP
1099 New York Avenue, N.W., Suite 900
Washington, DC 20001
Tel.: (202) 639-6029
Fax: (202) 661-4910
E-mail: jcarpenter@jenner.com

Brian J. Fischer
(Admitted *pro hac vice*)
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022-3908
Tel.: (212) 891-1629
Fax: (212) 891-1699
E-mail: bfischer@jenner.com

*Counsel for Defendant Delbert Services Corp.*

Dated:  September 19, 2014

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ............................................................................................................1

I.    The Forum-Selection Clause Is Enforceable And Requires Dismissal. ............................1

    A.    Delbert Can Enforce The Forum-Selection Clause. ................................................2

    B.    The Forum-Selection Clause Is Not Ambiguous. ....................................................3

    C.    The Forum-Selection Clause Must Be Enforced Under Federal Law. ....................5

        1.    The Forum-Selection Clause Was Not Induced By Fraud Or Overreaching........................................................................................................5

        2.    *Atlantic Marine* Forecloses Plaintiffs' Attack On Their Ability To Bring Suit In Tribal Court...........................................................................8

        3.    CRST Law Does Not Deprive Plaintiffs Of All Remedies........................8

        4.    Virginia Public Policy Cannot Void A Forum-Selection Clause................9

II.    Alternatively, The Tribal Exhaustion Doctrine Bars Plaintiffs' Suit..................................9

    A.    There Is No "Physical Presence" Requirement To Tribal Jurisdiction.................10

    B.    The Loan Agreements Implicate The CRST's Inherent Sovereign Authority. .........................................................................................................12

    C.    Exhaustion Applies Even If No Pending Tribal Case Is Ongoing.........................13

    D.    Delbert's Assertion Of Tribal Jurisdiction Is Not Made In Bad Faith..................14

III.    Alternatively, This Case Must Be Arbitrated. .....................................................14

    A.    The Arbitral Forum Is Available.......................................................................14

    B.    FAA § 5 Requires This Court To Appoint A Substitute For Any Unavailable Arbitral Forum Or Rules....................................................................16

    C.    The Delegation Clause Must Be Enforced.............................................................18

    D.    The Arbitration Clause Is Not Unconscionable. ....................................................19

CONCLUSION.........................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

<small>**CASES**</small>

*Albermarle Corp. v. AstraZeneca UK Ltd.*,
  628 F.3d 643 (4th Cir. 2010) .................................................9

*Am. Bankers Ins. Grp. Inc. v. Long*,
  453 F.3d 623 (4th Cir. 2006) .................................................3

*Am. Online, Inc. v. Huang*,
  106 F. Supp. 2d 848 (E.D. Va. 2000) ........................................2

*Anders v. Hometown Mortg. Servs., Inc.*,
  346 F.3d 1024 (11th Cir. 2003) ..............................................17

*Arrants v. Buck*,
  130 F.3d 636 (4th Cir. 1997) .................................................2

*AT&T Mobility LLC v. Concepcion*,
  131 S. Ct. 1740 (2011) .......................................................19

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
  134 S. Ct. 568 (2013) ......................................................2, 8

*Bank Julius Baer & Co. v. Waxfield Ltd.*,
  424 F.3d 278 (2d Cir. 2005) .................................................5

*Booker v. Robert Half Int'l, Inc.*,
  413 F.3d 77 (D.C. Cir. 2005) ................................................17

*Brown v. ITT Consumer Fin. Corp.*,
  211 F.3d 1217 (11th Cir. 2000) ..............................................16

*Carnival Cruise Lines, Inc. v. Shute*,
  499 U.S. 585 (1991) ..........................................................14

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*,
  584 F.3d 513 (3d Cir. 2009) ..................................................4

*Chamblee v. Old Dominion Sec. Co.*,
  No. 3:13cv820, 2014 WL 1415095 (E.D. Va. Apr. 11, 2014) ................5

*Chattanooga Mailers' Union, Local No. 92 v. Chattanooga News-Free Press Co.*,
  524 F.2d 1305 (6th Cir. 1975) ...............................................16

*DeJohn v. The .TV Corp.*,
  245 F. Supp. 2d 913 (N.D. Ill. 2003) ......................................6, 7

ii

*DISH Network Serv. L.L.C. v. Laducer*,
    725 F.3d 877 (8th Cir. 2013) ............................................................11

*Dockser v. Schwartzberg*,
    433 F.3d 421 (4th Cir. 2006) ............................................................15

*Dolgencorp, Inc. v. Miss. Band of Choctaw Indians*,
    746 F.3d 167 (5th Cir. 2014) ......................................................11, 13

*Gannon v. Circuit City Stores, Inc.*,
    262 F.3d 677 (8th Cir. 2001) ............................................................18

*Gita Sports, Ltd. v. SG Sensortechnik GmbH & Co. KG*,
    560 F. Supp. 2d 432 (W.D.N.C. 2008) .............................................9

*Granite Rock Co. v. Int'l Bhd. Of Teamsters*,
    561 U.S. 287 (2010)............................................................................5

*Green v. U.S. Cash Advance Ill., LLC*,
    724 F.3d 787 (7th Cir. 2013) ......................................................16, 17

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
    485 U.S. 271 (1988)...........................................................................4

*Hart v. Orion Ins. Co.*,
    453 F.2d 1358 (10th Cir. 1971) .........................................................5

*Heldt v. Payday Fin., LLC*,
    --- F. Supp. 2d ----, 2014 WL 1330924 (D.S.D. Mar. 31, 2014) ......11, 12

*In re Checking Account Overdraft Litig. MDL No. 2036*,
    674 F.3d 1252 (11th Cir. 2012) .......................................................19

*In re Checking Account Overdraft Litig. MDL No. 2036*,
    685 F.3d 1269 (11th Cir. 2012) .......................................................17

*Inetianbor v. CashCall, Inc.*,
    962 F. Supp. 2d 1303 (S.D. Fla. 2013) ............................................15

*Infomax Office Sys., Inc. v. MBO Binder & Co. of Am.*,
    976 F. Supp. 1247 (S.D. Iowa 1997) .................................................7

*Iowa Mut. Ins. Co. v. LaPlante*,
    480 U.S. 9 (1987).............................................................................10

*Jackson v. Cintas Corp.*,
    425 F.3d 1313 (11th Cir. 2005) .......................................................17

*Jackson v. Payday Fin., LLC*,
    No. 4:14-cv-24-HLM (N.D. Ill. Aug. 28, 2013) ...................................................15

*Jackson v. Payday Fin., LLC*,
    --- F.3d ----, 2014 WL 4116804 (7th Cir. Aug. 22, 2014) .............................. *passim*

*Jared & Donna Murayama 1997 Trust v. NISC Holdings, LLC*,
    727 S.E.2d 80 (Va. 2012)....................................................................................8

*Jones v. GGNSC Pierre LLC*,
    684 F. Supp. 2d 1161 (D.S.D. 2010) ...................................................................18

*Khan v. Dell Inc.*,
    669 F.3d 350 (3d Cir. 2012)................................................................................16

*Liles v. Ginn-La W. End, Ltd.*,
    631 F.3d 1242 (11th Cir. 2011) ..........................................................................14

*McDermott Int'l, Inc. v. Lloyds Underwriters of London*,
    944 F.2d 1199 (5th Cir. 1991) ..............................................................................4

*Metrocall of Del., Inc. v. Cont'l Cellular Corp.*,
    437 S.E.2d 189 (Va. 1993)....................................................................................8

*Michigan v. Bay Mills Indian Cmty.*,
    134 S. Ct. 2024 (2014).......................................................................................12

*Montana v. United States*,
    450 U.S. 544 (1981).....................................................................................10, 13

*Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda), Ltd.*,
    79 F.3d 295 (2d Cir. 1996)....................................................................................4

*Montgomery v. Applied Bank*,
    848 F. Supp. 2d 609 (S.D. W. Va. 2012) .............................................................16

*Muriithi v. Shuttle Express, Inc.*,
    712 F.3d 173 (4th Cir. 2013) ..............................................................................19

*Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*,
    471 U.S. 845 (1985).............................................................................................10

*Parnell v. Western Sky Financial, LLC*,
    No. 4:14-cv-24 (N.D. Ga. Apr. 28, 2014)......................................................15, 16

*Patten Secs. Corp. v. Diamond Greyhound & Genetics, Inc.*,
    819 F.2d 400 (3d Cir. 1987)..................................................................................4

*Plains Commerce Bank v. Long Family Land & Cattle Co.*,
    554 U.S. 316 (2008)............................................................................12

*Polar Mfg. Corp. v. Michael Weinig, Inc.*,
    994 F. Supp. 1012 (E.D. Wis. 1998)..................................................7

*Reddam v. KPMG LLP*,
    457 F.3d 1054 (9th Cir. 2006) ...........................................................18

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010)............................................................................18

*Rota-McLarty v. Santander Consumer USA, Inc.*,
    700 F.3d 690 (4th Cir. 2012) .............................................................16

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974)............................................................................6

*Schulze & Burch Biscuit Co. v. Tree Top, Inc.*,
    831 F.2d 709 (7th Cir. 1987) .......................................................16, 17

*Texaco, Inc. v. Zah*,
    5 F.3d 1374 (10th Cir. 1993) .............................................................13

*United States v. Turtle Mountain Hous. Auth.*,
    816 F.2d 1273 (8th Cir. 1987) ...........................................................13

*Unity Farm Constr., Inc. v. Slabtown*,
    24 Va. Cir. 242, 1991 WL 835044 (Va. Cir. Ct. June 26, 1991) ............7

*Wellman v. Chevron U.S.A., Inc.*,
    815 F.2d 577 (9th Cir. 1987) .............................................................13

*Williams v. Lee*,
    358 U.S. 217 (1959)..........................................................................13

*Zaklit v. Global Linguist Solutions, LLC*,
    No. 1:14cv314, 2014 WL 3109804 (E.D. Va. July 8, 2014) .................6

**STATUTES**

9 U.S.C. § 5......................................................................................16, 17, 18

**OTHER AUTHORITIES**

Frank Pommersheim, South Dakota Tribal Court Handbook 17-20 (rev. ed. 2006),
    *available at* http://ujs.sd.gov/media/docs/IndianLaw%20Handbook.pdf..................9

Indian Law Reporter: Tribal Court Cases Index, http://www.narf.org/nill/ilr/..............................15

Delbert[1] submits this reply memorandum of law in further support of its motion for an order: (1) dismissing this case with prejudice; (2) dismissing or staying this case pending Plaintiffs' exhaustion of tribal remedies; or (3) compelling arbitration and dismissing or staying this case.

## PRELIMINARY STATEMENT

In its opening brief, Delbert demonstrated that this case should be dismissed for three independent reasons: (1) the Loan Agreements' Forum-Selection Clause designating the CRST courts for any in-court litigation precludes suit in this Court; (2) the tribal exhaustion doctrine requires that federal courts stay a case pending resolution of the dispute in tribal court where, as here, there is a colorable argument that tribal jurisdiction exists; and (3) if the Court rejects either of those two grounds, the Loan Agreements' independent Arbitration Clause requires that all of Plaintiffs' claims be arbitrated. In opposition, Plaintiffs have not provided any basis that could justify voiding Plaintiffs' contractual commitments to sue in other fora. Accordingly, this Court should enforce those commitments and dismiss this case.

## ARGUMENT

### I.     The Forum-Selection Clause Is Enforceable And Requires Dismissal.

Recent Supreme Court precedent requires this Court to enforce the parties' Forum-Selection Clause and dismiss the Amended Complaint unless Plaintiffs can establish that "*extraordinary circumstances* unrelated to the convenience of the parties *clearly disfavor*"

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in Delbert's Memorandum of Law in Support of Delbert Services Corporation's Motion to Dismiss the First Amended Complaint, or, Alternatively, to Compel Arbitration ("Motion to Dismiss") (Dkt. 26). In addition, all exhibits cited herein refer to the exhibits attached to the Motion to Dismiss.

enforcing the Clause. *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 575 (2013) (emphasis added). Plaintiffs fail to meet this high burden.[2]

### A. Delbert Can Enforce The Forum-Selection Clause.

As a preliminary matter, Plaintiffs are incorrect in their assertion that Delbert cannot enforce the Forum-Selection Clause because it is neither a signatory to the Loan Agreements nor an assignee of Plaintiffs' loans. Opp. 8-9. Plaintiffs acknowledge that Consumer Loan Trust, which is the owner of their loans, could enforce the Forum-Selection Clause, *see id.* at 9-10, and Plaintiffs likewise have not disputed that "[w]hen Delbert services a loan, the owner of the loan designates Delbert to work as its *agent*." (Ex. 5 ¶ 3 (emphasis added).) Indeed, each Plaintiff received notice that Delbert's authority would include "processing your payments, responding to your questions, and *otherwise handling other matters* relating to your loan." (Ex. 5, Exs. A, B, & C (emphasis added).) Under basic contract law, "disclosed agents" of a principal "can enforce the same right[s]" as the principal. *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997). Because Delbert can enforce the entire Loan Agreements on behalf of Consumer Loan Trust as its agent, it can clearly enforce the Forum-Selection Clause contained in those Agreements.[3]

In addition, a nonsignatory can enforce a forum-selection clause against a signatory to a contract when the nonsignatory is "closely related" to a signatory. *Am. Online, Inc. v. Huang*,

---

[2] Plaintiffs also fail even to acknowledge their burden: they do not mention *Atlantic Marine* at all, despite the fact that Delbert cited it extensively in its opening brief.

[3] Plaintiffs claim that it is significant that "servicers" are explicitly mentioned in the Arbitration Clause but are not listed in the Forum-Selection Clause. Opp. 9-10. Delbert can enforce both the Arbitration and Forum-Selection Clauses, however, because Delbert is merely acting as the agent of the notes' holder—which Plaintiffs do not dispute could enforce both Clauses. *Id.* In any event, Plaintiffs are hoisted by their own petard, as they have apparently overlooked the fact that the only party explicitly mentioned in the Forum-Selection Clause is "you, the borrower" (*i.e.*, Plaintiffs themselves). (Ex. A at 1.) In other words, there can be no doubt that Plaintiffs explicitly agreed to bring suit solely in CRST court, yet they have violated that contractual agreement by suing in this Court instead.

106 F. Supp. 2d 848, 857 n.26 (E.D. Va. 2000) (quoting *Frietsch v. Refco, Inc.*, 56 F.3d 825, 827 (7th Cir. 1995)); *see also* Mot. to Dismiss 11.[4]  Similarly, a nonsignatory may enforce a contractual forum provision if "the signatory to the contract . . . raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Am. Bankers Ins. Grp. Inc. v. Long*, 453 F.3d 623, 627 n.3 (4th Cir. 2006) (quoting *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 396 (4th Cir. 2005)).  That is precisely what Plaintiffs accuse Delbert of here: "Delbert operates as a debt collection company that works together with Western Sky, CashCall, and other businesses owned by Mr. Webb to systemically perpetrate fraud and to scam consumers."  Opp. 3 (citing Am. Compl. ¶ 44). Because Plaintiffs accuse Delbert of "substantially interdependent and concerted misconduct" with Western Sky and others, they may not dispute that the Forum-Selection Clause applies to them.  *Am. Bankers Ins. Group Inc.*, 453 F.3d at 627 n.3.

Finally, Plaintiffs ignore the plain language of the Loan Agreements.  Plaintiffs acknowledge the Forum-Selection Clause applies to any suit regarding the "enforcement" of the Loan Agreements.  Opp. 9.  Plaintiffs' suit plainly relates to "enforcement" of the Loan Agreements, as the Amended Complaint alleges that Delbert is trying to "collect debts originated by Western Sky and/or CashCall that are void and *unenforceable* under Virginia law."  (Am. Compl. ¶ 159.)

### B.    The Forum-Selection Clause Is Not Ambiguous.

Plaintiffs contend that the Forum-Selection Clause is "ambiguous as a whole" and should therefore be construed against the drafter.  Opp. 10.  Plaintiffs argue this is so because both the

---

[4] Plaintiffs accuse Delbert of failing to cite "any authority for its position" that it can enforce the Forum-Selection Clause.  Opp. 9.  However, Delbert cited to *America Online* in its Motion to Dismiss (at 11).  Plaintiffs respond with no authority to the contrary.

Forum-Selection Clause and the Arbitration Clause are mandatory, which Plaintiffs deem an "inconsistency" in the Loan Agreements. *Id.* Plaintiffs assert that the alleged ambiguity somehow vitiates the Forum-Selection Clause in its entirety. That is incorrect.

The Loan Agreements provide that most "Disputes" between the parties will be resolved through arbitration, but acknowledge that some issues may be resolved in a court. For example, the Agreements provide that the validity of the class action waiver is not subject to arbitration. (Ex. A at 4-5.) Similarly, the Loan Agreements provide for judicial review of the arbitration award in the tribal courts, and allow claims to proceed in court if they fall within the jurisdiction of the CRST Court's "small claims tribunal." (*Id.* at 5.) Further, the Arbitration Clause allowed Plaintiffs to opt-out of arbitration entirely (which they did not do), in which case any dispute would have been subject to the exclusive jurisdiction of the CRST Court. (*Id.*) There is thus no contradiction between, or ambiguity created by, the Forum-Selection and Arbitration Clauses. They complement one another, requiring arbitration of most issues but allowing in-court litigation in the CRST Court for certain limited matters.

Courts faced with contracts containing forum-selection and arbitration clauses consistently interpret them in a complementary fashion, requiring arbitration but providing that any in-court litigation (such as to enforce an arbitration award or to undertake any other in-court litigation authorized by the contract) be governed by the forum-selection clause. *See, e.g., Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 554 (3d Cir. 2009); *Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda), Ltd.*, 79 F.3d 295, 298 (2d Cir. 1996); *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1204-05 (5th Cir. 1991); *Patten Secs. Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 407 (3d Cir. 1987), *abrogated on other grounds*, *Gulfstream Aerospace Corp. v.*

*Mayacamas Corp.*, 485 U.S. 271, 287 (1988); *Hart v. Orion Ins. Co.*, 453 F.2d 1358, 1361 (10th Cir. 1971); *cf. Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 284-85 (2d Cir. 2005), *abrogated on other grounds*, *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 300-01 (2010). There is thus no inconsistency between the Forum-Selection and Arbitration Clauses.

**C.      The Forum-Selection Clause Must Be Enforced Under Federal Law.**

Relying on pre-*Atlantic Marine* case law, Plaintiffs assert four additional grounds in support of their contention that the Forum-Selection Clause is unreasonable and therefore unenforceable. Opp. 14-20. Yet none of these grounds apply, either because Plaintiffs have failed to meet their burden to establish them or because they have been superseded by *Atlantic Marine*.

**1.      The Forum-Selection Clause Was Not Induced By Fraud Or Overreaching.**

Delbert demonstrated in its motion that the Forum-Selection Clause was not the result of fraud because (1) it was communicated clearly to Plaintiffs, (2) Plaintiffs failed to plead fraud with particularity, and (3) the Amended Complaint fails to allege Plaintiffs justifiably relied on the Forum-Selection Clause or any allegedly false statement in it. *See* Mot. to Dismiss 13-16. Plaintiffs make no attempt to rebut this showing. This alone is sufficient to establish that Plaintiffs have failed to meet their burden. *See, e.g.*, *Chamblee v. Old Dominion Sec. Co.*, No. 3:13cv820, 2014 WL 1415095, at *8 (E.D. Va. Apr. 11, 2014) ("When a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (quotations omitted)).

To support their unfounded allegation that the Forum-Selection Clause is the product of fraud, Plaintiffs instead argue that *other* provisions of the Loan Agreements contain "false

statements" that induced Plaintiffs to agree to the entire contracts. Opp. 14. This argument—that the Loan Agreements as a whole are the product of fraud—fails as a matter of law to invalidate the Forum-Selection Clause. A "forum-selection clause in a contract is not enforceable if the inclusion of *that clause* in the contract was the product of fraud or coercion." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974) (emphasis added). As Judge Cacheris held in a similar context, "to avoid the operation of a choice-of-law provision on the basis of overreaching or fraud, . . . the party resisting the clause must establish by clear and convincing evidence that the clause itself, as opposed to the contract as a whole, was the product of impropriety." *Zaklit v. Global Linguist Solutions, LLC*, No. 1:14cv314, 2014 WL 3109804, at *7 (E.D. Va. July 8, 2014). Thus, even if all the allegations in Plaintiffs' opposition brief are true (which they are not), they are irrelevant because none relates specifically to the Forum-Selection Clause in the Loan Agreements.

In any event, the statements Plaintiffs identify are simply not false. The Loan Agreements state that they are subject solely to tribal jurisdiction, and they contain an agreement by the parties that the Loan Agreements were "fully performed within" the Reservation and were "executed as if [Plaintiffs] were physically present" on the Reservation when the Loan Agreements were consummated. (Ex. A. at 3.) Courts routinely enforce such provisions, even if one of the two parties did not physically enter the designated jurisdiction. For example, in *DeJohn v. The .TV Corp.*, the contract provided that the "rights and obligations and all actions contemplated by [the Agreement] shall be governed by the laws of the United States of America and the State of New York, as if the Agreement was a contract wholly entered into and wholly performed within the State of New York." 245 F. Supp. 2d 913, 916 n.3 (N.D. Ill. 2003). The plaintiff there never entered the State of New York, however, having accepted the contract—like

Plaintiffs here—over the Internet. The court nonetheless enforced the forum-selection clause, demonstrating that parties who are physically located in different jurisdictions nonetheless may agree that the contract was formed as if both parties were physically present in a single jurisdiction for the purpose of effectuating a choice-of-law or choice-of-forum provision. *See id.* at 921. That is all the parties did here.[5] *See also Polar Mfg. Corp. v. Michael Weinig, Inc.*, 994 F. Supp. 1012, 1014 (E.D. Wis. 1998) (enforcing forum-selection clause stating that the contract "shall in all respects be governed by the laws of the state of North Carolina, U.S.A., *exactly as if all of the parties were all commercial entities located within said jurisdiction*" despite the fact that one of the parties never left Wisconsin (emphasis added)); *Infomax Office Sys., Inc. v. MBO Binder & Co. of Am.*, 976 F. Supp. 1247, 1249 (S.D. Iowa 1997) (enforcing choice-of-law clause providing that the contract "shall be governed and construed in accordance with Illinois law and shall be deemed to have been entered into at MBO America's offices in Westmont, Illinois," even though francishee in that case was in Iowa).[6]

Finally, Plaintiffs argue that the Loan Agreements are deceptive because, Plaintiffs allege, CashCall performs all underwriting requirements and accepts all payment after Western Sky assigns the loans to CashCall. Opp. 16. But Delbert has submitted an affidavit from a Western Sky employee making clear that "Western Sky set the underwriting criteria by which potential borrowers were reviewed and made the ultimate decision of whether to extend a loan."

---

[5] Plaintiffs also argue that the Forum-Selection Clause "falsely" states that it is made pursuant to the Indian Commerce Clause. Opp. 14-15. There is nothing "false" about that statement: as Delbert has explained, under principles embodied in the Indian Commerce Clause and under general federal Indian law, tribal jurisdiction exists here. Mot. to Dismiss 18-23; Part II below. In any case, such a representation of law cannot support a fraud claim. "A misrepresentation or misunderstanding of the law does not amount to actionable fraud." *Unity Farm Constr., Inc. v. Slabtown*, 24 Va. Cir. 242, 1991 WL 835044, at *3 (Va. Cir. Ct. June 26, 1991).

[6] Plaintiffs cite a statement from the Native American Financial Services Association ("NAFSA") purporting to disapprove of Western Sky. Opp. 15. NAFSA's members are Western Sky's competitors, so they have an obvious incentive to oppose Western Sky loans.

(Ex. 1 ¶ 5.)  Plaintiffs have submitted no evidence to the contrary.  Further, no Plaintiff could have justifiably relied to their detriment on the assumption they would make all payments to Western Sky.  The Loan Agreements each state that Western Sky "may assign or transfer this Loan Agreement or any of our rights under it at anytime to any party."  (Ex. A at 3.)  Nor do Plaintiffs ever explain why it makes a difference to them whether they send their payments to Western Sky, CashCall, or anyone else.  With no false statement and no justifiable reliance, there is no fraud.  *Jared & Donna Murayama 1997 Trust v. NISC Holdings, LLC*, 727 S.E.2d 80, 86 (Va. 2012); *Metrocall of Del., Inc. v. Cont'l Cellular Corp.*, 437 S.E.2d 189, 193-94 (Va. 1993).

**2.**     ***Atlantic Marine* Forecloses Plaintiffs' Attack On Their Ability To Bring Suit In Tribal Court.**

Plaintiffs argue that enforcing the Forum-Selection Clause would deprive them of their day in court because the Clause designates a forum that lacks jurisdiction.  Opp. 17.[7]  This argument fails for two reasons.  *First*, as discussed in Part II below, tribal courts have jurisdiction over this dispute, so Plaintiffs can have their day in tribal court.  *Second*, to the extent Plaintiffs object to the inconvenience of the selected forum, *see* Opp. 7, *Atlantic Marine* forbids this as a ground for voiding a forum-selection clause.

**3.**     **CRST Law Does Not Deprive Plaintiffs Of All Remedies.**

Contrary to Plaintiffs' assertion, CRST law does not "deprive[] the Plaintiffs of a remedy."  Opp. 19.  Plaintiffs claim that the Forum-Selection Clause is unenforceable because "the chosen law does not exist as outlined above."  *Id.*  However, the "above" section of Plaintiffs' brief argues only that CRST *consumer dispute rules* do not exist.  *See id.* at 17-19.

_____

[7] Confusingly, Plaintiffs' discussion of the Forum-Selection Clause includes a lengthy claim that *arbitration* pursuant to the Arbitration Clause does not exist.  Opp. 17-19.  In the context of enforcing the Forum-Selection Clause, this argument is misplaced, as the availability of *arbitration* has no bearing on whether the forum chosen for *litigation* is available.  And in any event, arbitration is available, as discussed below in Part III.

Plaintiffs make no argument that *general CRST law*—which is relevant to the Forum-Selection Clause and which CRST courts would apply—does not exist. That law exists and allows Plaintiffs to seek a robust set of remedies. *See* Frank Pommersheim, South Dakota Tribal Court Handbook 17-20 (rev. ed. 2006), *available at* http://ujs.sd.gov/media/docs/IndianLaw%20Handbook.pdf (last visited Sept. 19, 2014) (describing CRST law).

Further, even if CRST law provides Plaintiffs with fewer remedies than Virginia law, that is of no consequence. The unavailability of some or even most of the causes of action or forms of relief under the chosen forum's law is immaterial. A forum-selection clause must be enforced so long as the agreed-upon forum provides "*a remedy*" for the injuries alleged. *Gita Sports, Ltd. v. SG Sensortechnik GmbH & Co. KG*, 560 F. Supp. 2d 432, 440 (W.D.N.C. 2008) (court's emphasis). Plaintiffs do not contend (nor could they), that CRST law fails to recognize common law causes of action and principles of law and equity. *See* Pommersheim, above, at 19.

### 4.     Virginia Public Policy Cannot Void A Forum-Selection Clause.

Finally, Plaintiffs argue that enforcing the Forum-Selection Clause would contravene Virginia's public policy against usury. Opp. 20. But Fourth Circuit precedent precludes this argument, because a state's "strong public policy [cannot] countermand . . . the federal policy of favoring a contractual choice of forum." *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 652 (4th Cir. 2010). The Fourth Circuit has made clear that the federal rule favoring forum-selection clauses "would have little effect if states could effectively override the decision by expressing disagreement with the decision's rationale." *Id.*

## II.     Alternatively, The Tribal Exhaustion Doctrine Bars Plaintiffs' Suit.

Plaintiffs dispute the tribal exhaustion doctrine's application to this case. *See* Opp. 20-23. Under that doctrine, federal courts must first allow CRST courts to decide this case if

Delbert can establish (a) at least a colorable claim that tribal jurisdiction is appropriate and (b) that Plaintiffs have not first pursued remedies in tribal court before turning to a federal forum. *See Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 18-19 (1987); *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985). As Delbert demonstrated in its opening brief, exhaustion applies here because Plaintiffs have never pursued their remedies in tribal court and tribal jurisdiction is colorable under *Montana*'s "consensual relationship" exception. *See Montana v. United States*, 450 U.S. 544, 565-66 (1981); *see also* Mot. to Dismiss 18-23.

In arguing to the contrary, Plaintiffs rely heavily on the Seventh Circuit's recent opinion in *Jackson v. Payday Financial, LLC*, --- F.3d ----, 2014 WL 4116804 (7th Cir. Aug. 22, 2014).[8] Opp. 20-23. *Jackson* held that the CRST does not have jurisdiction over Western Sky loans because (1) the borrowers never physically entered the Reservation; and (2) there was no showing in *Jackson* that the Loan Agreements "implicate[] any aspect of the tribe's inherent sovereign authority." *Id.* at *11-12. But *Jackson* is unpersuasive, as it would nullify the rights of tribal member-owned businesses—and only tribal member-owned businesses—from participating in the modern Internet economy unless they forfeit their right to have their business activities governed by their home jurisdiction's law. This Court should reject *Jackson*'s reasoning and hold that the tribal exhaustion doctrine applies.

A.     There Is No "Physical Presence" Requirement To Tribal Jurisdiction.

*Jackson* erred in holding that a non-member must, in all circumstances, physically enter the reservation for tribal jurisdiction to exist. The Fifth Circuit recently noted that "the Supreme Court has never explicitly held that Indian tribes lack inherent authority to regulate nonmember

---

[8] *Jackson* was decided after Delbert submitted its opening brief on July 28, 2014. On September 5, 2014, the defendants in *Jackson* filed a petition for rehearing *en banc*, which, as of the date of this brief's filing, is pending before the Seventh Circuit.

conduct that takes place outside their reservations." *Dolgencorp, Inc. v. Miss. Band of Choctaw Indians*, 746 F.3d 167, 176 n.7 (5th Cir. 2014). Further, the Eighth Circuit has rejected the premise that a nonmember's physical entry onto a reservation is the *sine qua non* of tribal court jurisdiction, instead asking only whether the claim at issue "arises out of and is intimately related to" an agreement that "relates to activities on tribal land." *DISH Network Serv. L.L.C. v. Laducer*, 725 F.3d 877, 884 (8th Cir. 2013). In *Laducer*, the "activities on tribal land" were a tribal member's receipt of satellite television services without paying for them, but the claim was one for abuse of legal process by the satellite provider—a claim that the court assumed had "occurred off tribal lands." *Id.* Both the majority and dissenting Fifth Circuit opinions in *Dolgencorp* cite *Laducer* as demonstrating that it is incorrect to conclude that tribes lack inherent authority to hear claims against nonmembers based on conduct occurring outside the reservation. *See Dolgencorp*, 746 F.3d at 176 n.7; *id.* at 183 & n.12 (Smith, J., dissenting). *Jackson* thus has little support in case law.

  *Jackson* also ignores modern economic reality and how that reality intersects with the fact that many Indian reservations, including the Cheyenne River Indian Reservation, are in such remote locations that e-commerce is their only viable path to economic development. Of course, when *Montana* was decided, the very concept of e-commerce was unknown. As a federal district judge very experienced with tribal law issues wrote in ordering tribal court exhaustion of similar claims brought by borrowers with the same loan agreements as here: "[I]n today's modern world of business transactions through Internet or telephone, requiring physical entry on the reservation" for tribal jurisdiction, "particularly in a case of a business transaction with a consent to jurisdiction clause, seems to be requiring too much." *Heldt v. Payday Fin., LLC*, --- F. Supp. 2d ----, 2014 WL 1330924, at *14 (D.S.D. Mar. 31, 2014).

Further, *Jackson* conflicts with the strong, congressionally mandated policy of furthering Indian economic development. "A key goal of the Federal Government is to render Tribes more self-sufficient . . . rather than relying on federal funding." *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2043 (2014) (Sotomayor, J., concurring). Yet *Jackson* prohibits tribes from applying their own laws to a large swath of commercial transactions—Internet-based activities—that are vital to the ability of on-reservation Indians to conduct their own businesses, which in turn affects directly the economies of many Indian tribes. If accepted, *Jackson* will put Indian-owned businesses that operate nationally at a competitive disadvantage, forcing them to navigate a hodge-podge of 50 states' laws by precluding them from adopting their home jurisdiction's laws to ensure uniform regulation. Non-Indian owned businesses face no such restraints, giving them an artificial competitive advantage that threatens to destroy the federal policy favoring the development of Indian-owned business operating from Indian lands. This Court should therefore reject *Jackson*. At the very least, given the considerable flaws in *Jackson*'s reasoning, this Court should follow the District of South Dakota's conclusion that there is a colorable claim for tribal jurisdiction here, and order tribal exhaustion of the claims raised in Plaintiffs' Amended Complaint. *See Heldt*, 2014 WL 1330924, at *14-15; Mot. to Dismiss 18-23.

**B.    The Loan Agreements Implicate The CRST's Inherent Sovereign Authority.**

*Jackson* independently conflicts with *Dolgencorp* by requiring that, for a tribe to subject a consenting nonmember to its laws or courts, the dispute must implicate tribal internal relations or self-rule. *See Jackson*, 2014 WL 4116804, at *11-12 (interpreting language in *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 337 (2008), to impose such a requirement). *Dolgencorp* is clear, however, that the Fifth Circuit "do[es] not interpret *Plains Commerce* to require an additional showing that one specific relationship, in itself, intrudes on the internal relations of the tribe or threatens self-rule" to give rise to tribal court jurisdiction: "It

is hard to imagine how a single employment relationship between a tribe member and a business could ever have such an impact." *Dolgencorp*, 746 F.3d at 175 (internal quotations omitted).

The Fifth Circuit's interpretation is correct: as authority for the proposition that tribes may regulate "the activities of nonmembers who enter consensual relationships with the tribe or its members," *Montana* cited *Williams v. Lee*, an action to collect a debt from Indians who purchased goods on credit from a general store. *Montana*, 450 U.S. at 565 (citing *Williams*, 358 U.S. 217, 223 (1959)). Either the consumer credit action in *Williams and* those at issue here necessarily concern a tribe's inherent sovereign authority, or no such requirement exists to find tribal jurisdiction when a consensual relationship with a tribal member is involved.

### C. Exhaustion Applies Even If No Pending Tribal Case Is Ongoing.

Plaintiffs argue that tribal exhaustion cannot apply because there is no pending action between this litigation's parties in tribal court. Opp. 20-21. If exhaustion applied only where plaintiffs have already brought suit in tribal court, however, then the doctrine would be meaningless because plaintiffs would always race to sue first in federal or state court and thus prevent the tribal courts from determining whether they have jurisdiction. Tribal exhaustion is not designed simply to avoid duplicative litigation; it is designed to promote respect for tribal courts by allowing them to determine their own authority and jurisdiction in the first instance. *See Thlopthlocco Tribal Town v. Stidham*, --- F.3d ----, 2014 WL 4345420, at *11 (10th Cir. Sept. 3, 2014). Exhaustion "applies to cases in which the tribal court's jurisdiction is at issue, and its application does not depend upon the existence of a pending action in the tribal forum." *Texaco, Inc. v. Zah*, 5 F.3d 1374, 1376 (10th Cir. 1993) (internal citation omitted) (citing *Smith v. Moffett*, 947 F.2d 442, 444 (10th Cir. 1991) and *Brown v. Washoe Hous. Auth.*, 835 F.2d 1327 (10th Cir. 1988)); *see also United States v. Turtle Mountain Hous. Auth.*, 816 F.2d 1273, 1276 (8th Cir. 1987); *Wellman v. Chevron U.S.A., Inc.*, 815 F.2d 577 (9th Cir. 1987).

### D. Delbert's Assertion Of Tribal Jurisdiction Is Not Made In Bad Faith.

Plaintiffs claim that tribal exhaustion does not apply here because the assertion of tribal jurisdiction is "motivated by harassment or conducted in bad faith." Opp. 21. This argument is meritless. Each Plaintiff signed a Loan Agreement whose first paragraph states in bold letters that the Loan Agreement will be "subject solely to the exclusive laws and jurisdiction" of the CRST. (Ex. A at 1.) Seeking to hold Plaintiffs to their unambiguous contractual promise can hardly be considered "harassing," especially where the designated jurisdiction is one of the party's home jurisdiction. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (selecting jurisdiction where party has its "principal place of business" not bad faith). Even where "factors may make Plaintiffs' suit prospects more difficult, and less appealing" in the designated forum, "requiring suit in [a jurisdiction] for a contract" with a connection to that jurisdiction does not "evince[] a bad-faith motive of discouraging Plaintiffs from pursuing legitimate claims." *Liles v. Ginn-La W. End, Ltd.*, 631 F.3d 1242, 1255 (11th Cir. 2011); *see also* Mot. to Dismiss 17.

### III. Alternatively, This Case Must Be Arbitrated.

Even if this Court does not dismiss the Amended Complaint pursuant to the Forum-Selection Clause, the Arbitration Clause independently forbids Plaintiffs from suing in court. Mot. to Dismiss 23-29. Plaintiffs' arguments to the contrary are unpersuasive. Opp. 23-30.

### A. The Arbitral Forum Is Available.

Plaintiffs first contend that arbitration is impossible because there is no "authorized representative" of the CRST who could conduct it. Opp. 24-25. However, as Delbert showed in its Motion to Dismiss, Plaintiffs misread the Arbitration Clause, which allows use of the AAA or JAMS, both of which are available. Mot. to Dismiss 25-26. Plaintiffs claim that the AAA/JAMS clause is somehow also subject to the requirement that arbitration occur before a

tribal representative, *see* Opp. 26, but Plaintiffs ignore that the Arbitration Clause requires use of tribal arbitration and using the tribal rules, "except as provided" in the next paragraph, which allows Plaintiffs to select arbitration before the AAA or JAMS using their "consumer dispute" rules. (Ex. A at 4.) For that reason alone, Plaintiffs' repeated reliance on the decisions in *Jackson* and *Inetianbor* is misplaced: in neither case did the arbitration clauses expressly allow for arbitration before the AAA or JAMS using the rules of those organizations. *Jackson*, 2014 WL 4116804 at *1; *Inetianbor v. CashCall, Inc.*, 962 F. Supp. 2d 1303, 1305 (S.D. Fla. 2013).

Relying on *Parnell v. Western Sky Financial, LLC*, No. 4:14-cv-24 (N.D. Ga. Apr. 28, 2014), Plaintiffs also claim that arbitration before the AAA and JAMS is not possible because CRST law is not accessible, and therefore it is impossible to know whether the AAA or JAMS rules will conflict with CRST law. Opp. 26-27. This argument fails for two reasons.

*First*, "[t]he Supreme Court has instructed that 'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Dockser v. Schwartzberg*, 433 F.3d 421, 425 (4th Cir. 2006) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). The FAA thus requires the arbitrator to resolve what procedural law governs under the Arbitration Clause, not this Court.

*Second*, CRST law is available. *See Jackson v. Payday Fin., LLC*, No. 4:14-cv-24-HLM (N.D. Ill. Aug. 28, 2013), ECF No. 95 (concluding that "tribal law [is] readily available to the public"). CRST Tribal Court cases are often published in the Indian Law Reporter, whose indices are available online, *see* Indian Law Reporter: Tribal Court Cases Index, http://www.narf.org/nill/ilr/ (last visited Sept. 19, 2014), and the CRST also has a Constitution, By-Laws, a Law and Order Code, a version of the Uniform Commercial Code, and Rules of Civil Procedure.

**B.  FAA § 5 Requires This Court To Appoint A Substitute For Any Unavailable Arbitral Forum Or Rules.**

Significantly, even if Plaintiffs were correct that the arbitrator and rules called for by the Arbitration Clause are unavailable, Plaintiffs *still* must arbitrate their claims.  Section 5 of the FAA requires that courts appoint a substitute arbitrator when for "*any . . . reason*" there is a "lapse in the naming of an arbitrator," such as because the arbitral forum or designated rules are not available.  9 U.S.C. § 5 (emphasis added).  Citing no authority whatsoever, Plaintiffs argue that § 5 does not apply where the Court would have to "disregard the arbitrator whom the parties had specified," but only applies where the agreement is "silent" on the "method of naming or appointing" an arbitrator.  Opp. 27.  Plaintiffs' is an oft-rejected argument.  Indeed, the universal rule is that a court may appoint a substitute arbitrator under § 5 when the arbitration forum or rules designated by the parties' agreement cannot be used, for whatever reason.  *See, e.g.*, *Green v. U.S. Cash Advance Ill., LLC*, 724 F.3d 787, 793 (7th Cir. 2013); *Khan v. Dell Inc.*, 669 F.3d 350, 357 (3d Cir. 2012); *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000); *Montgomery v. Applied Bank*, 848 F. Supp. 2d 609, 614 (S.D. W. Va. 2012).[9]

Plaintiffs' claim that § 5 cannot be used to replace unavailable arbitral *rules* is similarly unpersuasive.  Opp. 27.  Section 5 allows courts to "supply" the "procedures [that] would govern" arbitration when necessary to effectuate an arbitration agreement.  *Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 831 F.2d 709, 716 (7th Cir. 1987); *Chattanooga Mailers' Union, Local No. 92 v. Chattanooga News-Free Press Co.*, 524 F.2d 1305, 1315 (6th Cir. 1975) ("[T]he

---

[9] Contrary to Plaintiffs' assertion, it is not "[i]ronic[]" that Delbert seeks to have the FAA apply here.  Opp. 27 n.11.  Under Fourth Circuit law, "a contract's general choice-of-law provision does not displace federal arbitration law if the contract involves interstate commerce."  *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 n.7 (4th Cir. 2012).  No party disputes that Plaintiffs' Loan Agreements involved interstate commerce, as even the *Parnell* court found.  *Parnell*, slip op. at 65.

arbitrator may determine his procedures if the parties cannot agree."), *overruled on other grounds*, *Bacashihua v. U.S. Postal Serv.*, 859 F.2d 402 (6th Cir. 1988). In other words, § 5 applies even when the arbitration clause does "not provide such implementing details as who the arbitrators would be, where arbitration would take place, and what procedures would govern." *Burch Biscuit*, 831 F.2d at 711. The alleged unavailability of the arbitrator and rules is simply insufficient to render the Arbitration Clause unenforceable.

Plaintiffs further claim that the terms of the Arbitration Clause were so "integral" to their decision to sign the Clause that those terms cannot be substituted under § 5. As Delbert explained in its Motion to Dismiss, there is no "integrality" exception to § 5, *see* Mot. to Dismiss 27, but even if there were, there is little doubt that the arbitral terms here are not integral.[10]

The Arbitration Clause makes clear that *none* of its terms are integral. (Ex. A at 5.) In arguing to the contrary, Plaintiffs ignore the Arbitration Clause's severability provisions. "[A] severability provision . . . evidences the parties' intention to enforce the remainder of the [arbitration] agreement in the event any portion of it is deemed invalid." *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1031 (11th Cir. 2003). Every federal appellate case Delbert has located has enforced the balance of an arbitration agreement containing a severability provision where the parties were unable to enforce certain terms in the arbitration agreement. *See In re Checking Account Overdraft Litig. MDL No. 2036*, 685 F.3d 1269, 1283 n.20 (11th Cir. 2012); *Jackson v. Cintas Corp.*, 425 F.3d 1313, 1317 (11th Cir. 2005); *Booker v. Robert Half*

_____

[10] The Seventh Circuit made clear in *Green* that there is no integrality exception to § 5, *see* 724 F.3d at 793, but *Jackson* is irreconcilable with *Green*'s holding. *Jackson* stated that § 5 did not apply because the tribal forum was an "essential part of [the borrower's] bargain," which is precisely the same as saying that it was integral. 2014 WL 4116804, at *10. Because a later Seventh Circuit panel cannot overrule a prior panel without the full court's approval, *see* 7th Cir. R. 40(e), *Green* is still good law. In any event, *Green* persuasively shows why there is no integrality or "essential part" exception (as *Jackson* called it) to FAA § 5. *See* 724 F.3d at 792-93.

*Int'l, Inc.*, 413 F.3d 77, 84-85 (D.C. Cir. 2005) (Roberts, J.); *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 682-83 (8th Cir. 2001). "The severance provision indicates that the intention was not to make the [designated forum] integral, but rather to have a dispute resolution process through arbitration" even if that forum is unavailable. *Jones v. GGNSC Pierre LLC*, 684 F. Supp. 2d 1161, 1167 (D.S.D. 2010).

Further, a designated forum or rules are integral only when "the parties have expressly stated" that the forum is "exclusive of all other fora." *Reddam v. KPMG LLP*, 457 F.3d 1054, 1061 (9th Cir. 2006), *overruled on other grounds by Atl. Nat'l Trust LLC v. Mt. Hawley Ins. Co.*, 621 F.3d 931, 940 (9th Cir. 2010). Here, the Arbitration Clause expressly provides that it is not exclusive—it states that the parties can arbitrate before the AAA, JAMS, or any other arbitrator they agree upon. Given this list of potential arbitrators and rules, one option (tribal arbitration using CRST consumer dispute rules) cannot possibly be exclusive and therefore integral.

### C.   The Delegation Clause Must Be Enforced.

Plaintiffs also claim that the Arbitration Clause is unconscionable under Virginia law and thus is unenforceable. Opp. 29-30. However, under the Arbitration Clause's Delegation Clause, only the arbitrator can decide whether the Arbitration Clause is valid. (Ex. A at 4.) The Supreme Court has squarely held that unless the plaintiff "challenge[s] the delegation provision specifically, [courts] must treat it as valid under [FAA] § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the [arbitration] Agreement as a whole for the arbitrator." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010).

The only time Plaintiffs even mention the Delegation Clause is to claim that "because the arbitral forum is unavailable," there is no arbitrator to decide whether the Arbitration Clause is valid. Opp. 29. As described above, that is wrong because the designated fora and rules are available and, even if they are not, FAA § 5 requires appointment of a substitute.

Plaintiffs thus fail to meet their burden in their attack on the Delegation Clause. Because a "delegation provision is severable from the rest of the arbitration agreement," it "must be challenged 'specifically.'" *In re Checking Account Overdraft Litig. MDL No. 2036*, 674 F.3d 1252, 1256 (11th Cir. 2012) (quoting *Rent-A-Ctr.*, 130 S. Ct. at 2778). Plaintiffs have not done so, and accordingly this Court must treat the Delegation Clause as valid and allow the arbitrator to resolve Plaintiffs' claim that the Arbitration Clause is unconscionable.

### D.        The Arbitration Clause Is Not Unconscionable.

Plaintiffs' unconscionability argument fails on the merits for two reasons. *First*, the Fourth Circuit has made clear that the Supreme Court's opinion in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), "plainly prohibit[s] application of the general contract defense of unconscionability to invalidate an otherwise valid arbitration agreement." *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 180 (4th Cir. 2013). As such, unconscionability simply cannot be used in an attempt to avoid arbitration. *Second*, there is no serious argument that arbitration before such well-known organizations like the AAA or JAMS could possibly "shock the conscience" so as to render the Arbitration Clause unconscionable. Opp. 29. And Plaintiffs conveniently omit that the Arbitration Clause (1) requires that Delbert pay for all filing fees and any costs or fees of the arbitrator, and (2) allows Plaintiffs to have arbitration occur within thirty miles of each Plaintiff's residence. (Ex. A at 4.) These terms are hardly so "grossly inequitable" as to be unconscionable.

### CONCLUSION

For the aforementioned reasons, as well as those set forth in its opening brief, Delbert respectfully requests this Court to: (1) dismiss this case under the doctrine of *forum non conveniens* pursuant to the Forum-Selection Clause; (2) dismiss or stay this case under the tribal exhaustion doctrine; or (3) compel arbitration and dismiss or stay this case.

Dated: September 19, 2014    **JENNER & BLOCK LLP**

By:＿＿＿/s/＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
        Julie M. Carpenter
        Virginia Bar No. 30421
        JENNER & BLOCK LLP
        1099 New York Avenue, N.W., Suite 900
        Washington, DC 20001
        Tel.: (202) 639-6029
        Fax: (202) 661-4910
        E-mail: jcarpenter@jenner.com

        Brian J. Fischer
        (Admitted *pro hac vice*)
        JENNER & BLOCK LLP
        919 Third Avenue
        New York, NY 10022-3908
        Tel.: 212-891-1629
        Fax: 212-891-1699
        E-mail: bfischer@jenner.com

        *Counsel for Defendant Delbert Services Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of September, 2014, I served a copy of the foregoing REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DELBERT SERVICES CORPORATION'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT, OR, ALTERNATIVELY, TO COMPEL ARBITRATION via the Court's electronic filing system, which will automatically send email notification of such filing to the following counsel of record:

Dale Wood Pittman
The Law Office of Dale W. Pittman, P.C.
112-A W Tabb St
Petersburg, VA 23803-3212
Tel.: (804) 861-6000
Fax: (804) 861-3368
Email: dale@pittmanlawoffice.com

Kristi Cahoon Kelly
Kelly & Crandall PLC
4084 University Dr., Suite 202A
Fairfax, VA 22030
Tel.: (703) 424-7572
Fax: (703) 591-1067
Email: kkelly@kellyandcrandall.com

James Wilson Speer
Virginia Poverty Law Center
700 E Franklin St., Suite 14T1
Richmond, VA 23219
Tel.: (804) 782-9430
Email: jay@vplc.org

Leonard Anthony Bennett
Consumer Litigation Associates
763 J Clyde Morris Blvd., Suite 1A
Newport News, VA 23601
Tel.: (757) 930-3660
Fax: (757) 930-3662
Email: lenbennett@clalegal.com

*Counsel for Plaintiffs*

        /s/

Julie M. Carpenter
Virginia Bar No. 30421
JENNER & BLOCK LLP
1099 New York Avenue, N.W., Suite 900
Washington, DC 20001
Tel.: (202) 639-6029
Fax: (202) 661-4910
E-mail: jcarpenter@jenner.com

*Counsel for Defendant Delbert Services Corp.*