IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES HAYES, *et al.*,

    Plaintiffs,

v.

    Civil Action No. 3:14-cv-258

DELBERT SERVICES CORPORATION,

    Defendant.

## OPINION

This matter comes before the Court on the defendant's motion to dismiss the amended complaint or, alternatively, to compel arbitration. (Dk. No. 30.) The plaintiffs, borrowers from internet payday lender Western Sky Financial, LLC, brought this action on behalf of themselves and others similarly situated against Delbert Services Corporation, a third-party debt collector. The plaintiffs allege Delbert violated the Fair Debt Collection Practices Act ("FDCPA") and the Telephone Consumer Protection Act ("TCPA") in the course of its collection efforts. Delbert moves to dismiss based on the Loan Agreements' forum-selection clause or on the basis of the tribal exhaustion doctrine. Alternatively, Delbert moves to compel arbitration.

The forum-selection clause does not reach third-party debt collectors such as Delbert, and the doctrine of tribal exhaustion does not apply under the facts of this case. The language of the arbitration agreement, however, covers disputes with third-party debt collectors.

Accordingly, the Court GRANTS the motion to compel arbitration under the terms of the Loan Agreement and DISMISSES the claim without prejudice.

# I. Statement of Facts[1]

James Hayes, Debera Grant, and Herbert White, residents of Virginia, each borrowed money from Western Sky through its website. Western Sky is wholly owned by Martin A. Webb, an enrolled member of the Cheyenne River Sioux Tribe ("CRST"), and operates exclusively on the CRST Reservation in South Dakota. Hayes' Loan Agreement, representative of the other plaintiffs' Agreements, states that in August 2012 he borrowed $2525 at an annual percentage rate of 139.12%, resulting in a finance charge of $11,568.12 over the forty-eight-month life of the loan. (Dk. No. 16, Ex. B at 6.) After underwriting these loans, Western Sky originates them through its wholly owned affiliate WS Funding, LLC, which then transfers the Notes to Consumer Loan Trust. (Dk. No. 26 at 5.) Consumer Loan Trust contracts with Delbert to service these loans and collect on the debt if necessary.

When the plaintiffs missed payments on their loans, Delbert sent them dunning letters in an effort to collect the outstanding balances. (Dk. No. 16, Ex. A, B). The plaintiffs claim that these letters violated the FDCPA by (1) failing to identify the name of the actual creditor of the debt; (2) misrepresenting that Consumer Loan Trust was the actual creditor; (3) failing to disclose that the communication is from a debt collector; and (4) misrepresenting the character and legal status of the debt.[2] The plaintiffs also claim that Delbert violated the TCPA when it

---

[1] A motion to dismiss for improper venue concerning a forum-selection clause is properly brought under Fed. R. Civ. P. 12(b)(3). *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006). A Rule 12(b)(3) motion allows the court to consider evidence outside the pleadings. *Id.* Because an arbitration clause functions as a specialized kind of forum-selection clause, *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365 n.9 (4th Cir. 2012), this principle applies to a motion to compel arbitration.

[2] In violation, respectively, of 15 U.S.C. § 1692g(a)(2); § 1692e(10); § 1692e(11); and, § 1692c(2)(A).

2

used an auto-dialer or pre-recorded voice message to place collection calls to the plaintiffs' cellular phones without prior consent.[3]

Delbert moves to dismiss this action, or, alternatively, to compel arbitration. The Court will address in turn the forum-selection clause, the tribal exhaustion doctrine, and the arbitration agreement.

## II. Discussion

### A. The Forum-Selection Clause

"When parties to a contract confer jurisdiction and venue on a particular court, as a general matter federal common law directs courts to favor enforcement of the agreement, so long as it is not unreasonable." *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 649 (4th Cir. 2010) (citing *M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. 1, 10 (1972)). "When construing forum selection clauses, federal courts have found dispositive the particular language of the clause." *Id.* at 650.

The forum-selection clause in the Loan Agreements at issue states:

> This Loan Agreement is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation. By executing this Loan Agreement, you, the borrower, hereby acknowledge and consent to be bound to the terms of this Loan Agreement, consent to the sole subject matter and personal jurisdiction of the Cheyenne River Sioux Tribal Court, and that no other state or federal law or regulation shall apply to this Loan Agreement, its enforcement or interpretation.

(Dk. No. 26, Ex. 1-A at 1.) A subsequent paragraph in this section of the Loan Agreement defines the terms "'[w]e,' 'us,' 'our,' and 'Lender'" to mean "Western Sky Financial, LLC, . . . and any subsequent holder of this Note." *Id.*

---

[3] In violation of 47 U.S.C. § 227(b)(1)(A)(iii).

The plain language of the forum-selection clause does not reach Delbert, a third-party debt collector, because Delbert is not a "subsequent holder of this Note." *Id.* The clause omits any reference to coverage for a servicer, debt collector, or any entity other than a holder of the Note.

A comparison of the forum-selection clause and the arbitration agreement[4] supports this conclusion. In the arbitration agreement, the term "Dispute" includes "any controversy or claim between you and Western Sky or the holder *or servicer of the Note.*" *Id.* at 4 (emphasis added). The term "holder" in the arbitration agreement includes not only "the then-current note holder's employees" but also any "servicing and collection representatives and agents." *Id.* Applying the canon *expressio unius est exclusio alterius* ("expression of one thing is the exclusion of another"), the absence of "servicing and collection representatives and agents" in the forum-selection clause confirms that it does not cover third-party debt collectors like Delbert.[5]

For these reasons, Delbert may not enforce the forum-selection clause against the plaintiffs.

---

[4] The "arbitration agreement" at issue here comprises a subsection of the main Loan Agreement. The Court will follow the common practice of referring to these types of provisions as "arbitration agreements," even when they occur as part of a broader contract.

[5] Moreover, any alleged ambiguity in the forum-selection clause would favor the plaintiffs. "Familiar contract principles require that ambiguities in unilaterally prepared contracts are to be resolved against the drafter." *Hendrick v. Brown & Root, Inc.*, 50 F. Supp. 2d 527, 533 (E.D. Va. 1999) (citing *Gates, Hudson & Assoc., Inc. v. Fed. Ins. Co.*, 141 F.3d 500, 502 (4th Cir. 1997)); *see also* Arthur L. Corbin, et. al., *Corbin on Contracts* § 559, supp. at 337 (1960 & Supp. 1996) ([T]he canon of *contra proferentem* is "imposed as a matter of public policy as a penalty for bad draftsmanship.").

4

*B. The Tribal Exhaustion Doctrine*

The tribal exhaustion doctrine requires federal courts to abstain from "hearing certain claims relating to Indian tribes until the plaintiff has first exhausted those claims in tribal court."[6] *Jackson v. Payday Fin., LLC,* 764 F.3d 765, 784 (7th Cir. 2014) (quoting *Garcia v. Akwesasne Hous. Auth.,* 248 F.3d 76, 79 (2d Cir. 2001)). This prudential doctrine "does not apply mechanistically to every claim brought by or against an Indian tribe." *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.,* 207 F.3d 21, 31 (1st Cir. 2000). "A tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction," and "the sovereignty that the Indian tribes retain is of a unique and limited character. It centers on the land held by the tribe and on the tribal members within the reservation." *Plains Commerce Bank v. Long Family Land & Cattle Co.,* 554 U.S. 316, 330, 128 S. Ct. 2709 (2008).

Courts recognize two instances in which tribal jurisdiction may reach non-members: (1) when non-members enter into consensual commercial dealings such as contracts or leases with the tribe or its members; or (2) when non-member conduct "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Montana v. United* States, 450 U.S. 544, 565, 101 S. Ct. 1245 (1981). Where a dispute arises from conduct occurring off reservation lands, a court must examine the circumstances attendant to the dispute to determine "whether comity suggests a need for exhaustion of tribal remedies." *Ninigret,* 207 F.3d at 32.

Tribal exhaustion does not apply to Delbert for three reasons. First, Delbert is not a tribal- or Indian-owned business. Western Sky, the originating lender, could argue that it is wholly owned by a member of the CRST. Delbert makes no such claim. Second, the collection

---

[6] The Court uses the term "Indian" in this opinion to reflect the fact that both governing statutes and relevant case law follow this practice.

5

activity that gave rise to the plaintiffs' claims of FDCPA and TCPA violations did not occur on the CRST reservation.[7] Delbert sent dunning letters to the plaintiffs from Delbert's offices in Las Vegas, Nevada, and plaintiffs received the letters in Virginia. Nor does Delbert claim that it ever called the plaintiffs from a location within the CRST. Third, this dispute in no way threatens or directly affects the integrity, security, or welfare of the CRST. The conduct at issue in this action did not involve an Indian-owned entity, did not occur on the CRST reservation, and did not threaten the integrity of the tribe. The *Montana* requirements for exhaustion simply do not apply. *See Montana*, 450 U.S. at 565-66.

For these reasons, the tribal exhaustion doctrine does not require dismissal of the plaintiffs' claims against Delbert.

### C. The Arbitration Agreement

The Federal Arbitration Act reflects the overarching principle that arbitration is a matter of contract. *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013). Courts must, as a general rule, "rigorously enforce arbitration agreements according to their terms," *id.* (internal quotation marks omitted), in accordance with a "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011).

Under the heading "Agreement to Arbitrate," the Loan Agreement states, "You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the [CRST] Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement." (Dk. No. 26, Ex. 1-A at 4.) This language, by itself, has

---

[7] Although each Loan Agreement states that it "is fully performed within the exterior boundaries of the [CRST] Reservation," the conduct at issue in this case does not involve the first-party lender or its assignee. The plaintiffs do not challenge the debt itself, only Delbert's conduct in its attempt to collect on that debt. The Court, then, need not address the validity of the Agreement's assertion of on-reservation activity by borrowers.

proved problematic in cases involving similar loan agreements for internet lenders. The court in *Inetianbor v. CashCall, Inc.*, 962 F. Supp. 2d 1303 (S.D. Fla. 2013), found that the CRST did not appoint authorized arbitrators nor did it have "consumer dispute rules." 962 F. Supp. 2d at 1309. This double failure rendered the arbitral forum unavailable and voided the arbitration agreement. *Id.* Similarly, in *Jackson v. Payday Financial, LLC*, 764 F.3d 765 (7th Cir. 2014), the court held that the CRST "has neither a set of procedures for the selection of arbitrators nor one for the conduct of arbitral proceedings," and it found the arbitration agreement unenforceable. 764 F.3d at 778. The agreements in these cases, however, lacked the additional language present in the Loan Agreements at issue here, which allows parties to choose arbitrators and dispute rules beyond those of the CRST.

According to the "Choice of Arbitrator" section, the plaintiffs "have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association . . . ; JAMS [Judicial Arbitration and Mediation Services] . . . ; or an arbitration organization agreed upon by you and the other parties to the Dispute." (Dk. No. 26, Ex. 1-A at 4.) This language saves the arbitration agreement from meeting the same fate as those in *Inetianbor* and *Jackson*. The plaintiffs are not limited to the illusory "authorized representatives" of the CRST and its non-existent "consumer dispute rules." Under the Loan Agreements at issue, the parties have recourse to well-recognized arbitration organizations and their procedures.[8]

As previously noted, the arbitration agreement includes language broader than that used in the forum-selection clause. The arbitration agreement defines "dispute" as "any controversy

---

[8] *See also Chitoff v. CashCall, Inc.*, No. 0:14CV60292, 2014 WL 6603987 (S.D. Fla. Nov. 17, 2014) (granting a motion to compel arbitration and finding that "a subsequent portion of the agreement allows for arbitration to be administered by the Arbitration Association of America or by Judicial Arbitration and Mediation Services").

or claim between you and . . . the holder or servicer of the Note," and then broadly defines "holder" to encompass "any . . . *collection representatives* and agents." *Id.* (emphasis added). The plain language of the agreement covers third-party debt collectors, allowing Delbert to compel the plaintiffs to pursue their claims in arbitration.

Delbert may also enforce the agreement's class action and class arbitration waivers against the plaintiffs. The agreement puts borrowers on notice that "YOU ARE WAIVING YOUR RIGHT TO . . . PARTICIPATE IN A CLASS ACTION LAWSUIT" and that "the arbitrator has no authority to conduct class-wide proceedings." *Id.* (emphasis in original). Courts have consistently upheld such waivers. *See Italian Colors*, 133 S. Ct. at 2312 (enforcing individual arbitration); *see also Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002) (holding that absent clear statutory language to the contrary, a plaintiff's inability to bring a class action "cannot by itself suffice to defeat the strong congressional preference for an arbitral forum").

For these reasons, the arbitration agreement controls the present dispute between the plaintiffs and Delbert.

### III. Conclusion

"[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001).

For the reasons set forth above, the Court GRANTS the defendant's motion to compel arbitration and DISMISSES the complaint without prejudice.

8

The Court will enter an appropriate order.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

Date: <u>January 21, 2015</u>
Richmond, VA

/s/ _____
John A. Gibney, Jr.
United States District Judge

9