UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JAMES HAYES, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 3:14-cv-258 (JAG) |
| | ) |
| DELBERT SERVICES CORPORATION | ) |
| | ) |
| Defendant. | ) |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION
FOR LEAVE TO FILE AN AMENDED COMPLAINT**

Plaintiffs, by counsel, submit this Reply in Support of Plaintiffs' Motion for Leave to File an Amended Complaint ("Motion").

**I.  Overview**

Defendant Delbert Services Corporation's opposition to this Motion focuses on the alleged "undue delay" of Plaintiffs. In doing so, Delbert omits a critical fact—Delbert's counsel *specifically* requested that Plaintiffs hold off on the filing of the Second Amended Complaint until after the settlement conference on April 13, 2016. Just as importantly, Delbert fails to disclose to the Court that Plaintiffs provided a copy of the Second Amended Complaint to Delbert on April 13, 2016. Yet, at the request of Delbert, Plaintiffs did not file the Second Amended Complaint until settlement communications broke down in late April. As settlement communications broke down, Delbert produced its initial set of documents in this case on Friday, April 22, 2016, which confirmed that J. Paul Reddam ("Reddam") siphoned millions of dollars from Delbert in violation of Nevada's dissolution laws. Plaintiffs filed this Motion within 9 business days of receiving Delbert's initial set of documents. Thus, Delbert has no one to blame but itself because the delay occurred at the request of Delbert.

1

Delbert also argues that it will be prejudiced by the amendment. To that end, Delbert identifies two burdens that it will suffer as a result of the amendment. First, Delbert contends that the Second Amended Complaint, which expands the Telephone Consumer Protection Act to a national class, would require Delbert to perform an "exponentially greater national production" of records. Even if this were true, Delbert does not contend that it would be impossible to perform this search prior to the July 12, 2016 discovery cut-off. Moreover, it is likely that this information is readily available because of the ongoing litigation in other jurisdictions involving Reddam and his affiliated entities. *See, e.g., Kemph v. Reddam*, Case No. 13-cv-6785, 2015 WL 1510797 (N.D. Ill. 2015); *Inetianbor v. CashCall, Inc.*, Case No. 13-cv-60066 (S.D. Fla.) (granting leave to amend to add Reddam personally).

Second, Delbert contends that the allegations relating to Plaintiffs' new RICO claim will not be the same as the facts presently at issue in this case because the RICO discovery "will focus on the alleged maintenance of a corrupt enterprise between and among Delbert, Mr. Reddam, and several non-parties." (Def.'s Mem. at 8). However, the alleged corrupt enterprise already permeates several of the other claims in the First Amended Complaint, such as Plaintiffs' § 1692e(2)(A) class claim. (*See* Dkt. 16 at ¶ 113). Among other things, the § 1692e(2)(A) claim alleges that Delbert violated the FDCPA by: (1) misrepresenting that Western Sky approved and issued the loan; and (2) through the collection of an otherwise illegal loan. *Id*. Discovery regarding the corrupt enterprise will not only inevitably occur, but it should also be straightforward as no one can seriously dispute that Western Sky was "nothing more than a front to enable CashCall to evade licensure by state agencies and to exploit Indian Tribal Sovereign Immunity to shield its deceptive business practices from prosecution by state and federal regulators." *In re CashCall, Inc.*, Case No. 12-308, June 4, 2013 Cease and Desist Order, New

Hampshire Banking Department; *see also Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 669 (4th Cir. 2016) ("No one appears to seriously dispute that Western Sky's payday loans violated a host of state and federal lending laws.").

## II. Argument

### 1. Plaintiffs Did Not Unduly Delay the Filing of this Motion.

Delbert's opposition contends that the Court should deny this Motion because Plaintiffs unduly delayed the filing of this motion. Before addressing this argument, however, it is important to note "[in] the Fourth Circuit, it is abundantly clear that 'delay alone' is insufficient to deny leave to amend." *Smithfield Foods Inc. v. United Food & Commercial Workers Int'l Union*, 254 F.R.D. 274, 279 (E.D. Va. 2008) (Payne, J.) (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir.1986)). "The delay must be accompanied by prejudice, bad faith, or futility." *Johnson*, 785 F.2d at 510. In other words, Delbert must show both delay *and* prejudice.

Delbert relies on "two facts" to support its contention that Plaintiffs unduly delayed seeking leave to amend. First, while ignoring the procedural posture of this case, Delbert claims that the causes of action against Reddam and the RICO claims could have been filed in June 2014. In this same vein, Delbert claims that "no new facts" explain why these claims were not brought two years ago when Plaintiffs filed the First Amended Complaint. However, new facts do exist that support adding Reddam, namely the recently discovered fact that Reddam dissolved Delbert and fraudulently transferred its assets.[1] And while Plaintiffs could have added the RICO claim in their First Amended Complaint, Delbert's accusation that Plaintiffs delayed this filing by almost two years ignores the procedural history of this case, which took nearly two years to resolve the enforceability of the arbitration provision in the underlying loan agreements.

---

[1] Tellingly, Delbert does not challenge the repeated assertions by Plaintiffs in their opening memorandum regarding the fraudulent transfer.

Second, Delbert contends that Plaintiffs specifically stated their intention to file the Second Amended Complaint on March 21, 2016, but unduly delayed the filing for six weeks. As explained above, however, Delbert's counsel *specifically* requested that Plaintiffs hold off on the filing of the Second Amended Complaint until after settlement conference on April 13, 2016, in hopes that the parties would resolve this case. Delbert's counsel not only omits that Delbert specifically requested Plaintiffs to hold off on the filing, but Delbert further omits that it had a near final copy of the Second Amended Complaint as of April 13, 2016. In short, a majority of the purported "undue delay" occurred at the request of Delbert and the remaining nominal delay occurred while Delbert had possession of the Second Amended Complaint.

In support of its argument, Delbert selectively quotes this Court's opinion in *Jackson v. United Airlines, Inc.*, 2009 WL 2147840 (E.D. Va. July 15, 2009), which Delbert claims "strongly supports a finding of undue delay." (Def.'s Mem. at 6). *Jackson* is easily distinguishable from the present case for two reasons. First, unlike the present case, the plaintiff moved for leave to amend in *Jackson* after the close of discovery and just several weeks before the July 29, 2009 trial date. *Id*. at *1. Second, unlike the *six week* delay in this case (largely due to the request of Delbert), the plaintiff delayed at least *four months* in *Jackson* after first acknowledging the potential amendment. *Id*. at *2, n. 3. Once these obvious differences are understood, it is clear that *Jackson* does not even marginally support a finding of delay in this case.

At first, Plaintiffs delayed this filing for several weeks at the request of Delbert, who had possession of the Second Amended Complaint as of April 13, 2016. At most, Plaintiffs "delayed" the filing of this Motion by one or two weeks after settlement communications broke down. During this time, Plaintiffs' counsel was reviewing Delbert's initial document production

4

to determine if any additional claims existed and to ensure, as suspected, that Reddam fraudulently siphoned the assets of Delbert upon its dissolution. Moreover, "delay alone is insufficient to deny leave to amend," and the filing of the Second Amended Complaint will not unfair prejudice Delbert. *Smithfield Foods*, 254 F.R.D. at 279.

> 2. **Defendant Will Not Suffer Any Undue Prejudice.**

"It is axiomatic that almost every amendment of a complaint results in some prejudice to a defendant. Hence, the relevant test in each case must be whether undue prejudice would result from the amendment." *Smithfield Foods*, 254 F.R.D. at 278. As one court explained, "to show prejudice the party opposing the amendment of a complaint 'must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely.'" *Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1189 n.8 (3d Cir. 1994) (quoting *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989)).

In its opposition, Delbert does not argue that the amendment would *unfairly* deprive Delbert of the opportunity to present facts or evidence. Rather, the only burden articulated by Delbert is the purported burden of additional discovery regarding: (1) the national TCPA class, and (2) the enterprise, including the payments and contractual relationships between and among the Reddam-affiliated entities. Delbert not only drastically and conclusory overstates the burden of this discovery, but even if it were true, "a large amount of additional discovery" does not constitute undue prejudice. *Rambus, Inc. v. Infineon Techs., AG*, 304 F. Supp. 2d 812, 827 (E.D. Va. 2004). And while two months may seem like a compressed discovery schedule in most jurisdictions, it is not remarkable in the "rocket docket" of the Eastern District of Virginia, where parties are routinely required to complete discovery within 3 months of the initial order.

Delbert's argument regarding its prejudice are similar to the arguments made by the defendant in *NewMarket Corp. v. Innospec, Inc.*, 2011 WL 250993, at *3 (E.D. Va. Jan. 26, 2011) (Hudson, J.). In *NewMarket*, the plaintiff alleged that the defendant violated various federal laws by bribing government officials in Iraq and Indonesia. *Id*. at *1. After reviewing an initial set of discovery, the plaintiff sought leave to amend to expand the relevant geographic market in the complaint. *Id*. In opposition, the defendant argued that the proposed amendment would be prejudicial because it would impose substantial costs, including the addition of more costly and difficult discovery. In rejecting the defendant's arguments, the Court observed:

> Turning first to the issue of prejudice to the opposing party, the Court is not persuaded that the addition of Iraq as a relevant market or submarket would prejudice Defendants. The Second Amended Complaint does not add a new cause of action, nor would it substantially change Plaintiffs' theory of the case. Instead, it enlarges the relevant geographic market in support of Plaintiffs' antitrust claims. The amendment stems from the same alleged factual premise raised in both the original and Amended Complaint, which logically placed Defendants on notice that the alleged events in Iraq will be at issue in this case. With two months remaining in the discovery period, Defendants have ample opportunity to glean the factual basis for this claim.
>
> Furthermore, this Court's decision with regard to prejudice to the opposing party is informed by the Fourth Circuit's opinion in *Ward Electronics Service, Inc. v. First Commercial Bank,* 819 F.2d 496, 497 (4th Cir.1987). There, the Fourth Circuit reversed the district court's denial of leave to amend the complaint, holding that "a change in the theory of recovery and one prior amendment of the complaint are not sufficient to justify denial of leave to amend under the principles of *Foman* and *Davis*." 819 F.2d at 497. The motion to file a Second Amended Complaint in *Ward* was made one month before the scheduled close of a two and one-half month discovery period.
>
> In this case, Plaintiffs moved for leave to file their Second Amended Complaint nearly three months prior to the close of the discovery period, and almost five months before the scheduled trial date. Additionally, although both parties concede that the document production phase of discovery has begun, it has not progressed to the point that permitting an amendment to the pleadings would cause prejudice to Defendants. Indeed, Defendants only produced their first set of documents to Plaintiffs approximately ten days after Plaintiffs filed this motion. Finally, as Plaintiffs note in their memorandum supporting their motion, only one deposition has occurred in this case to date. These factors demonstrate that

Delbert's argument regarding its prejudice are similar to the arguments made by the defendant in *NewMarket Corp. v. Innospec, Inc.*, 2011 WL 250993, at *3 (E.D. Va. Jan. 26, 2011) (Hudson, J.). In *NewMarket*, the plaintiff alleged that the defendant violated various federal laws by bribing government officials in Iraq and Indonesia. *Id*. at *1. After reviewing an initial set of discovery, the plaintiff sought leave to amend to expand the relevant geographic market in the complaint. *Id*. In opposition, the defendant argued that the proposed amendment would be prejudicial because it would impose substantial costs, including the addition of more costly and difficult discovery. In rejecting the defendant's arguments, the Court observed:

> Turning first to the issue of prejudice to the opposing party, the Court is not persuaded that the addition of Iraq as a relevant market or submarket would prejudice Defendants. The Second Amended Complaint does not add a new cause of action, nor would it substantially change Plaintiffs' theory of the case. Instead, it enlarges the relevant geographic market in support of Plaintiffs' antitrust claims. The amendment stems from the same alleged factual premise raised in both the original and Amended Complaint, which logically placed Defendants on notice that the alleged events in Iraq will be at issue in this case. With two months remaining in the discovery period, Defendants have ample opportunity to glean the factual basis for this claim.
>
> Furthermore, this Court's decision with regard to prejudice to the opposing party is informed by the Fourth Circuit's opinion in *Ward Electronics Service, Inc. v. First Commercial Bank,* 819 F.2d 496, 497 (4th Cir.1987). There, the Fourth Circuit reversed the district court's denial of leave to amend the complaint, holding that "a change in the theory of recovery and one prior amendment of the complaint are not sufficient to justify denial of leave to amend under the principles of *Foman* and *Davis*." 819 F.2d at 497. The motion to file a Second Amended Complaint in *Ward* was made one month before the scheduled close of a two and one-half month discovery period.
>
> In this case, Plaintiffs moved for leave to file their Second Amended Complaint nearly three months prior to the close of the discovery period, and almost five months before the scheduled trial date. Additionally, although both parties concede that the document production phase of discovery has begun, it has not progressed to the point that permitting an amendment to the pleadings would cause prejudice to Defendants. Indeed, Defendants only produced their first set of documents to Plaintiffs approximately ten days after Plaintiffs filed this motion. Finally, as Plaintiffs note in their memorandum supporting their motion, only one deposition has occurred in this case to date. These factors demonstrate that

> Defendants will not be prejudiced if Plaintiffs are granted leave to file their Second Amended Complaint at this stage.

*Id*.

The present case shares many similarities with *NewMarket*. In fact, there is even less prejudice to Delbert in this case because: (1) more than two months remained in the discovery period when this motion was filed (and almost three months when Delbert received a copy of the Second Amended Complaint); (2) it is more than five months before the October 31, 2016 trial date; (3) not a single deposition has occurred in this case; (4) Delbert has at least 8 attorneys from Skadden actively working on this case; and (5) Delbert has produced the *entire loan files* for all 17,000 of the Virginia class members, *i.e.*, the overwhelming majority of the discovery needed to prosecute the new claims for violation of the Virginia Consumer Protection Act and usury laws.[2]

Likewise, the addition of Reddam, the new RICO claim, and the expansion of the TCPA will require very little, if any, discovery—most of which should be readily available (or will inevitably be produced by Delbert and Reddam) because of the ongoing litigation in other jurisdictions. Regardless, there is ample time between now and the July 12, 2016 discovery cut-off for each party to obtain any discovery on the new issues in the Second Amended Complaint. Any prejudice is also neutralized by the fact that Reddam has been involved in this litigation since its inception and will be subject to discovery as the chief executive of Delbert. And to the extent that Delbert and Reddam had insufficient time to conduct discovery, they could also move the Court for additional time. *Rambus*, 304 F. Supp. 2d at 828 ("Currently, the parties are to complete all fact and expert discovery by March 26, 2004. This should provide ample time for

---

[2] Even if the Court denies the Motion as to Reddam, the expanded TCPA claim and/or the RICO claim, the Court should still grant the Motion as to the VCPA and usury claim as there is absolutely no prejudice to the addition of these claims.

Rambus to undertake any additional discovery. If, however, it should be shown that Rambus, after diligent pursuit of discovery, has had insufficient opportunity to undertake proper discovery, the Court will address the issue at that time.").[3]

### III. Conclusion

Accordingly, because Delbert would suffer no prejudice and Plaintiffs have not acted in bad faith or for a dilatory motive, Plaintiffs respectfully request the Court to grant their Motion for Leave to File the Second Amended Complaint.

> Respectfully submitted,
> **JAMES HAYES**, *et al.*
>
> ____/s/_____
> Kristi Cahoon Kelly, VSB #72791
> Andrew J. Guzzo, VSB #82170
> KELLY & CRANDALL, PLC
> 4084 University Drive, Suite 202A
> Fairfax, Virginia 22030
> (703) 424-7576 Telephone
> (703) 591-9285 - Facsimile
> E-mail: kkelly@kellyandcrandall.com
> E-mail: aguzzo@kellyandcrandall.com
>
> *Counsel for Plaintiffs*

---

[3] While attacking the credibility of Plaintiffs' counsel, Delbert also contends that the Motion "utterly ignores" the absent class members who will be "swept into the newly added class definitions" with "factual development in discovery of less than two months." (Def.'s Mem. at 9). Of course, the absent class members will not suffer any prejudice as they may always opt-out of any class trial or settlement. Moreover, it is ironic that Delbert and Reddam, who pocketed millions by exploiting consumers, now advocate for their protection in this case.

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 17th day of May, 2016 I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification to all counsel of record.

Joseph Barloon
Warren Thomas Allen, II
Jennifer Zoe Gindin
Clifford Sloan
Skadden Arps Slate Meagher & Flom LLP (DC)
1440 New York Ave NW
Washington, DC 20005-2111
joseph.barloon@skadden.com
wtallen@skadden.com
jennifer.gindin@skadden.com
cliff.sloan@skadden.com

Thomas Nolan
Skadden Arps Slate Meagher Flom LLP
300 S Grand Ave #3400
Los Angeles, CA 90071
Thomas.nolan@skadden.com

                                                               ___/s/_____
                                              Kristi Cahoon Kelly, VSB #72791
                                              KELLY & CRANDALL, PLC
                                              4084 University Drive, Suite 202A
                                              Fairfax, Virginia 22030
                                              (703) 424-7576 Telephone
                                              (703) 591-9285 - Facsimile
                                              E-mail: kkelly@kellyandcrandall.com
                                              *Counsel for Plaintiffs*