IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES HAYES, *et al.*,

        Plaintiffs,

v.

                                                  Civil Action No. 3:14-cv-258 (JAG)
                                                  [*Consolidated with* 3:16-cv-311]

DELBERT SERVICES CORP., *et al.*,

        Defendants.

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs, James Hayes, Debera Grant, Herbert White, Leslie Grainger, and Donald Hill, individually and on behalf of all other similarly situated individuals, by Counsel, submit this Memorandum in support of their Motion for Preliminary Approval of Class Settlement, Conditionally Certifying Class for Purposes of Settlement, Appointing Class Counsel, Directing Notice to the Class, and Scheduling Final Fairness Hearing.

## I.    INTRODUCTION

This case presents a putative class action alleging various class and non-class claims for violations of various state and federal laws. Plaintiffs' Consolidated Class Action Complaint names James Hayes, Debera Grant, Herbert White, Leslie Grainger, and Donald A. Hill as Plaintiffs, and Delbert Services Corporation ("Delbert"), John Paul Reddam, and CashCall, Inc. ("CashCall") as Defendants. (Doc. 123.)[1]

---

[1] Contemporaneously with the filing of this motion, the Commonwealth of Virginia, *ex rel.* Mark R. Herring, Attorney General, has moved to intervene and support this proposed settlement.

After formal discovery, numerous substantive motions, a thorough exploration of the Parties' claims and defenses, and arms'-length negotiations, the Parties entered into a Stipulation and Agreement of Settlement (the "Settlement Agreement"), a copy of which is attached to the Motion as Exhibit 1. The Settlement Agreement proposes the settlement of all claims for the putative classes pleaded against the Defendants in the Consolidated Class Action Complaint (Doc.123.) Pursuant to Federal Rule of Civil Procedure 23, the Plaintiffs and Defendants now seek preliminary approval of the proposed class action settlement. Specifically, the Parties request that the Court preliminarily and conditionally certify the proposed Class and the proposed class settlement by entering the proposed Order of Preliminary Approval of Class Action Settlement, a copy of which is attached to the Motion as Exhibit 2.[2]

Plaintiffs submit this Memorandum in support of their Motion for Preliminary Approval of Settlement, certification of the class for purposes of settlement, and approval of the form, manner, and administration of notice. A final motion and proposed order supporting the fairness of the proposed settlement will be submitted after members of the Settlement Class have received notice and have had an opportunity to object/comment or opt-out, and prior to the Court's Final Approval Hearing. For the reasons set forth in detail below, the proposed settlement is reasonable, fair, and adequate, and it should be approved by the Court.

## II. THE CLAIMS TO BE SETTLED & PLAINTIFFS' INVESTIGATION

This case has been fiercely litigated by both sides, and has grown in scope of allegations and parties since the complaint was filed in 2014. On April 10, 2014, Plaintiffs James Hayes and Debera Grant filed a class action complaint against Delbert, styled as *Hayes, et al. v. Delbert Services Corporation*, Civil Action No. 3:14-cv-00258 in the United States District Court for the

---

[2] All capitalized terms used herein have the meanings set forth in this memorandum or in the Agreement.

Eastern District of Virginia, alleging that Delbert violated the Fair Debt Collection Practices Act. Plaintiffs alleged that Delbert, in collecting from Plaintiffs an internet loan debt, did not properly disclose the name of the creditor to whom the debt was owed. (Doc. 1.) On June 27, 2014, Plaintiffs Hayes, Grant and Herbert White filed an amended class action complaint. (Doc. 16.) Delbert filed a motion to dismiss and compel arbitration, which was granted by the district court (Doc. 38.), but subsequently reversed by the Court of Appeals for the Fourth Circuit. *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 668 (4th Cir. 2016).

On May 17, 2016, due to the dissolution of Delbert, Plaintiffs Hayes, Grant and White filed a second amended class action complaint against Delbert and newly-added Defendant John Paul Reddam, adding alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Virginia Consumer Protection Act, Virginia's usury law, and the Telephone Consumer Protection Act. (Doc. 81.) Separately, on May 26, 2016, Plaintiffs Hayes and White filed a class action complaint against CashCall in a separate action captioned *White, et. al. v. CashCall, Inc.*, Civil Action No. 3:16-cv-00311, which was consolidated with the first action referenced above on July 1, 2016. (Doc. 106.)

On July 22, 2016, Plaintiffs filed a consolidated class action complaint against the Defendants (Doc. 123), which combined the allegations of the two consolidated cases. Generally, Plaintiffs alleged that Defendants violated federal and Virginia law related to their practice of charging annual interest on consumer payday loans made to Virginians in excess of the 12% annual interest prescribed by Virginia law, and without meeting the criteria for an exception to this law. (Doc. 123.) The Parties engaged in motions practice and discovery. Defendants produced more than 19,000,000 pages of documents in response to Plaintiffs' discovery requests. In addition to reviewing and analyzing these documents, Plaintiffs conducted depositions related to the facts alleged. In response, Defendants denied that Virginia law applied to the loans at issue, disputed

that the Plaintiffs' claims properly stated an offense, contested the Court's personal jurisdiction over Reddam, and raised other legal defenses. (Docs. 132, 134, 136.)

During the pendency of the motions, the Attorney General of the Commonwealth of Virginia (the "Commonwealth") initiated an investigation of the matter against CashCall and Reddam. With the addition of the Commonwealth, the Parties began to discuss the possibility of settling this action. Though Defendants did not concede liability, it is apparent that they felt vulnerable to at least a potential finding that its loans violated federal and state law. Similarly, Plaintiffs were motivated to obtain significant and immediate relief for Virginia consumers and avoid substantial risks and uncertainties – within the case and from outside events.

The Settlement proposed herein resolves all of the claims raised in the consolidated class action complaint. Defendants deny liability and that a class is appropriate for Rule 23 certification on the claims asserted in this action, but Defendants do not oppose the certification of the Settlement Class for the purpose of resolving this action.

### III. THE PROPOSED SETTLEMENT OF THE CLASS CLAIM.

**A.    Settlement Class.**

Under the Settlement Agreement, the Parties agreed to resolve the claims of the Class of persons defined as follows (the "Settlement Class"):

> All individuals who obtained a loan from Western Sky that was subsequently purchased by WS Funding and who are identified as Virginia residents in their Western Sky loan agreements.

Based on a review of their records, Defendants estimate that the Settlement Class consists of approximately 17,046 individual consumers.[3]

**B.    The Consideration Provided To The Settlement Class Under The Settlement Agreement.**

---

[3] The estimate of the number of potential Class Members is driven by the number of applicable loans, 17,046, and assumes that each loan was obtained by a unique individual.

Plaintiffs achieved the proposed settlement in the face of substantial merits and Rule 23 defense leverage. Additionally, with Defendants having settled or facing costly outcomes in other actions initiated in other states, both the options and resources available for a Class Settlement were at risk of depletion. Nevertheless, Plaintiffs were able to negotiate a settlement structure that will provide real benefits to Virginians generally in the form of injunctive relief, as well as loan relief and/or cash payments to Class Members. The settlement is as strong as nearly any other case brought against Defendants.

The Settlement Agreement requires that Defendants eliminate all outstanding loans belonging to Settlement Class Members, pay a net $9,435,000 into a Settlement Fund for the sole benefit of the Settlement Class, contact credit bureaus to request removal of reporting of the loans at issue, and release judgments and provide other relief relevant to Settlement Class Members' loans. (Ex. 1, Settlement Agreement § 3.4.) Defendants have agreed, both directly and through any business or entity of which a Defendant has any management control or ownership, to stop charging annual interest on consumer loans made to Virginians in excess of 12% annual interest, unless they have met the criteria for an exception under Virginia law. *See* Va. Code § 6.2-303(A), (B). Defendants have also agreed to entry of an injunction prohibiting them from violating certain sections of the Virginia Consumer Protection Act, which generally prohibit suppliers from engaging in fraudulent acts or practices which misrepresent relevant information to the consumer. *See* Va. Code §§ 59.1-200(A)(2), (3), (5), (14). This relief will benefit all Virginians, including Settlement Class Members.

As summarized above, the Settlement Agreement provides real financial relief —in the form of loan elimination and/or a cash payment—to each Settlement Class Member. As to all Settlement Class Members with an Outstanding Loan, Defendants will forgive, discharge, and adjust to zero balance their loans. (Ex. 1, Settlement Agreement § 3.4(a)(ii).) Defendants estimate

that approximately 7,000 loans made by Settlement Class Members will be discharged. The value of this relief is not included in the Settlement Fund, but will exceed $5,000,000 in outstanding balances. Those Settlement Class Members with "Residual Balance Loans," defined as loans either paid in full or which would have been paid in full had the loan been originated at a 12% interest such that payments were made effectively over the 12% threshold, will receive a cash payment from the Settlement Fund in proportion to their interest overpayment.[4] Defendants estimate that approximately 10,000 loans are Residual Balance Loans, qualifying Settlement Class Members for a pro rata cash payment.[5]

All Settlement Class Members, regardless of the status of their loans, will also receive additional relief from the Defendants. Defendants have agreed that all Virginia Western Sky Loans are disputed debts and if a judgment was obtained, Defendants will notify the relevant court that the judgment is satisfied. (*Id*. § 3.4(a)(iii).) Defendants will also contact the applicable credit bureaus to request permanent removal of any credit reporting Defendants previously made for Virginia Western Sky Loans. (*Id*. § 3.4(a)(v).) Defendants have also agreed not to sell or transfer any remaining unpaid accounts. (*Id*. § 3.4(a)(iv).) For those accounts that were previously sold, Defendants have agreed to provide information regarding these accounts to Class Counsel. These benefits to Settlement Class Members have also not been calculated as within the Settlement Fund, but constitute real benefits for Settlement Class Members.

Finally, these benefits will be provided to Class Members without Class Members submitting any forms or making any claims against the fund. Class Members will receive these

---

[4] Those Settlement Class Members with open loan(s) that would have been paid in full had the loan been originated at a 12% interest, will be entitled to both loan forgiveness on the loan balance as well as a pro-rata cash payment.

[5] The Settlement Agreement provides that Class Counsel will determine a plan of allocation. (Settlement Agreement § 3.4(b)(i).)

benefits without having to prove any harm whatsoever, or make the more-difficult showing of willfulness.

In addition to the benefits for Class Members, Defendants have agreed to pay (separate from the Settlement Fund) attorneys' fees and costs of notice and administration (not to exceed $2,375,000), and service award of $5,000 per named Plaintiff. (*Id*. §§ 3.5, 3.6.)  This fee would be roughly 20% of the total cash recovery, and an even lower proportion if calculated against the eliminated debt.

**C.      The Required Class Action Fairness Act Notice.**

The Defendants will cause notice of the proposed settlement to be served under the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1715. The CAFA Notice will be sent to the Attorney General of the United States and to the attorneys general of all states and the District of Columbia and all U.S. territories, within ten days after the filing of the Settlement Agreement with the Court. To account for the deadlines under governing law, the Parties request that the Final Approval Hearing be scheduled no earlier than 90 days from the date of the mailing of the CAFA Notice.

**D.      Attorneys' Fees and Expenses; Service Award.**

Class Counsel shall make an application to the Court for an award for attorneys' fees, costs, and class administration expenses in an amount not to exceed $2,375,000.  All class administration expenses, estimated to be $50,000, are to be paid by Class Counsel.  Defendants shall not oppose or object to this application. The Parties have agreed that the award of attorneys' fees, costs, and class administration expenses will be paid separate and above the Settlement Fund in an amount approved by the Court. (Ex. 1, Settlement Agreement §§ 3.6, 3.7.)

Plaintiffs will also apply for a service award for their role as Class Representatives to compensate each Plaintiff for his/her effort in prosecuting this case including retaining counsel,

assisting in discovery, and keeping abreast of the litigation. Defendants have agreed not to oppose the application for the service award, which will be sought in the amount of $5,000 each, for a cumulative maximum of $25,000. The Parties have agreed that the Named Plaintiff service awards will be paid separate and above the Fund in an amount approved by the Court. (*Id.* § 3.5.)

**E.      The Release Of Claims.**

In return for the consideration provided to the Settlement Class described above, and without showing of monetary harm or willfulness whatsoever, Class Members will release all claims against the Defendants, as follows:

> As of the Effective Date of this Settlement, Plaintiffs and each member of the Settlement Class shall be deemed to have fully, finally and forever released and discharged the Released Parties from any and all claims, grievances, suits and causes of action relating to the conduct alleged by the Named Plaintiffs in the Consolidated Class Action Complaint in this Action and any other conduct relating to Virginia Western Sky Loans, whether arising in contract, tort, statute, common law, criminal law, or any other theory of action, whether arising in law or equity, whether known or unknown, choate or inchoate, matured or un-matured, contingent or fixed, liquidated or unliquidated, accrued or un-accrued, asserted or un-asserted, based upon any fact, whether known or unknown, that happened prior to the Effective Date, all, collectively, the "Released Claims." Without limiting the foregoing, the Released Claims specifically extend to claims that Settlement Class Members do not know or suspect to exist in their favor at the time that the Settlement, and the releases contained therein, becomes effective.

(*Id.* § 4.1.)

**F.      Notice and Exclusions.**

Class Notice will be direct, First-Class mail, accomplished by Dahl Administration, a nationally known, third-party settlement administrator. Notices will be address-scrubbed and re-mailed if returned with an available alternate address. Additionally, the settlement administrator will establish and maintain an Internet site in conjunction with the Commonwealth of Virginia, on which pertinent information will be made available to Class Members.

Any Class Member who desires to be excluded from the class must send a written request for exclusion to the Class Administrator at the address provided on the Notice. The Settlement

Class Member's Opt-Out request must contain the Class Member's original signature, current postal address and a specific statement that the Class Member wants to be excluded from the Settlement Class. Opt-Outs must postmarked no later than the deadline set by the Court in the Preliminary Approval Order. In no event shall persons who purport to opt out of the Settlement Class as a group, on an aggregate basis or as a class involving more than one Class Member be considered valid Opt-Outs. Requests for exclusion that do not comply with any of the foregoing requirement are invalid. Defendants will have the right to withdraw from the Settlement if more than 5% of the Settlement Class submits a valid request for exclusion. (*Id.* § 7.3.)

## IV. ARGUMENT

### A. Elements of Certification for Settlement Class.[6]

There is a strong judicial policy within this Circuit favoring resolution of litigation prior to trial. *See, e.g., S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("The voluntary resolution of litigation through settlement is strongly favored by the courts.") (citing *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)). Settlement spares the litigants the uncertainty, delay, and expense of a trial and appeals while simultaneously reducing the burden on judicial resources. As the court in *Stone* observed:

> In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.

749 F. Supp. at 1423 (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)).

Rule 23 permits courts to preliminarily certify a class for purposes of effectuating a settlement of the case. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*,

---

[6] It is understood and agreed by the Parties that if the Settlement Agreement is not consummated pursuant to the terms set forth therein, the certification of the Settlement Class shall be void, and Defendants shall be deemed to have reserved their respective rights to oppose any and all class certification issues.

55 F.3d 768, 793-94 (3rd Cir. 1995) (collecting cases and authority). A court may grant preliminary approval of a class action where the class proposed for settlement satisfies the four prerequisites of Rule 23(a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), as well as one of the three subsections of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). If the Court determines a settlement class should be certified, the Court must then follow a three-step process prior to granting final approval of a proposed settlement. *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000).

First, the Court must preliminarily approve the proposed settlement. *Id.* at 547. Second, members of the class must be given notice of the proposed settlement. *Id.* Third, a final fairness hearing must be held, after which the Court must decide whether the proposed settlement is fair, adequate, and reasonable to the class as a whole, and consistent with the public interest. *Id.* This protects the class members' procedural due process rights and enables the Court to fulfill its role as the guardian for the class's interests. *Id.* Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.*

**B.    Consideration of the Rule 23(a) And Rule 23(b) Elements.**

Rule 23 governs the certification of class actions. In considering a settlement at the preliminary approval stage, the first question for the Court is whether a settlement class satisfies the requirements set forth in Rule 23, and thus may be conditionally certified for settlement purposes. Under Rule 23(a), one or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and/or fact common to the class; (3) the claims or defenses of the

representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a).

Here, the Parties have reached a proposed agreement on behalf of the Settlement Class, which should be certified.

### 1. The Class Meets all Rule 23(a) Requirements.

#### a. Numerosity.

"There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied." *Kelly v. Norfolk & W. Ry. Co.*, 584 F.2d 34, 35 (4th Cir. 1978). In applying that rule, courts have consistently held that joinder is impracticable and numerosity is satisfied where the class is composed of hundreds of potential claimants; indeed, numerosity has been deemed sufficient as to classes with fewer than 50 members. *See, e.g., Cypress v. Newport News Gen. and Non-Sectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967) (a class of 18 members met numerosity requirement); *Jeffreys v. Communic'n Workers of Am.,* 212 F.R.D. 320, 322 (E.D. Va. 2003) ("where the class numbers twenty-five or more, joinder is generally presumed to be impracticable").

Here, numerosity is not an issue. As detailed above, there are approximately 17,046 members in the Class, more than adequate to establish that joinder is impracticable.

#### b. Commonality.

Commonality requires that there be at least one question of law or fact common to the members of the class. *Jeffreys*, 212 F.R.D. at 322. And, "the fact that there are some factual variances in individual grievances among class members does not defeat commonality." *Morris v. Wachovia Secs., Inc.*, 223 F.R.D. 284, 292 (E.D. Va. 2004) (citations omitted).

Here, by definition, members of the Settlement Class share multiple questions of law and/or fact. The Settlement Class Members are alleged to be the subject of a practice whereby Defendants,

in violation of federal and state law, charged usury interest rates on consumer loans made to Virginians. The practices at issue with respect to this claim are identical across Class Members. The theories of liability as to all Settlement Class Members therefore arise from the same practices and present basic questions of law and fact common to all members of the Settlement Class. *See* FED. R. CIV. P. 23(a).

### c. Typicality.

In order for Rule 23's typicality requirement to be met, a named plaintiff "may proceed to represent the class only if the plaintiff establishes that his claims or defenses are 'typical of the claims or defenses of the class.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2001) (citing FED. R. CIV. P. 23(a)(3)). Typicality is satisfied as long as the plaintiff's claim is not "so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Id.* at 466–67.

Plaintiffs' claims arise from Defendants' practices concerning loans provided to Virginians. As discussed in the previous section, these are the same claims advanced on behalf of the Settlement Class Members, and Plaintiffs are members of the settlement class. Plaintiffs' claims thus rest on the same legal and factual issues as those of the class members. That is the hallmark of typicality. *See Deiter*, 436 F.3d at 466 (citing Fed. R. Civ. P. 23(a)(3)).

### d. Adequacy of Representation.

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class. That protection involves an analysis of two factors: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the class. *See, e.g., Mitchell-Tracey v. United Gen. Title Ins.*, 237 F.R.D. 551, 558 (D. Md. 2006) (citing *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 499 (D. Md. 1998)).

Plaintiffs fairly and adequately represent the interests of the Settlement Class. They have retained experienced attorneys to represent them. The Plaintiffs' attorneys have substantial experience in both class action and consumer rights' litigation. Moreover, Plaintiffs have no interests antagonistic to the interests of the Settlement Class and are unaware of any actual or apparent conflicts of interest between themselves and the Settlement Class.

When Class Counsel negotiated the settlement in this case, they made it their first priority to achieve the best possible outcome for the Class. This Court has recognized the advantages that experienced counsel with an expertise in both the factual and legal issues in a case present to both the parties and to the docket. *See S.C. Nat'l Bank*, 139 F.R.D. at 339 (concluding fairness met where settlement discussions "were, at times, supervised by a magistrate judge and were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience in the area of securities law).

Class counsel have extensive collective experience in both consumer protection and class action litigation, having been involved in now numerous, large consumer class actions where they have been found to be suitable Class Counsel, particularly in this District. *See, e.g.*, *Soutter v. Equifax Info. Servs., LLC*, 3:10CV107, 2011 WL 1226025, at *10 (E.D. Va. Mar. 30, 2011) ("[T]he Court finds that Soutter's counsel is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases."); *see also Manuel v. Wells Fargo Bank, Nat. Ass'n*, No. 3:14CV238, 2015 WL 4994549, at *15 (E.D. Va. Aug. 19, 2015); *Williams v. Lexis-Nexis Risk Mgt.*, No. 3:06cv241 (E.D. Va. 2008); *Beverly v. Wal-Mart*, No. 3:07cv469 (E.D. Va. 2007); *Cappetta v. GC Servs., Inc.,* No. 3:02cv288 (E.D. Va.); *Ryals v. HireRight Sols. Inc.,* No. 3:09CV625 (E.D. Va.), *Daily v. NCO,* No. 3:09CV031 (E.D. Va. 2011); *Lengrand v. Wellpoint,* No. 3:11CV333-HEH (E.D. Va.); *Henderson v. Verifications Inc.,* No.

3:11CV514-REP (E.D. Va. 2013); *Pitt v. K-Mart Corp*, 3:11CV697; *White v. Experian,* 8:05-cv-01070(C.D. Cal.); *Teagle v. LexisNexis Screening Solutions, Inc.* (formerly "Choicepoint"); *Berry v. LexisNexis Risk & Information Analytical Group*, 3:11cv754 (E.D. Va.).

2. **The Class Likewise Satisfies the Rule 23(b)(3) Considerations.**

The proposed settlement contemplates permitting opt-outs pursuant to Rule 23(b)(3). An action may be maintained as a class action if the four Rule 23(a) elements described above are satisfied, and in addition, "the Court finds that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

a. **Predominance.**

If the Settlement Class is to be certified under Rule 23(b)(3), the common issues of law and/or fact shared by the Settlement Class Members must "predominate" over individual issues. Rule 23(b)(3)'s predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004); *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 142 (4th Cir. 2001). This criterion is normally satisfied when there is an essential, common factual link between all class members and the defendants for which the law provides a remedy. *Talbott*, 191 191 F.R.D. 99, 105 (W.D. Va. 2000) (citing *Halverson v. Convenient FoodMart, Inc.*, 69 F.R.D. 331 (N.D. Ill. 1974)). And, predominance exists where the resolution of class members' individual claims depends on examining common conduct by a defendant. *Jeffreys,* 212 F.R.D. at 323 (finding predominance because class members' claims were based on same acts by defendant and the determinative "question in each individual controversy" was common).

The predominance requirement is satisfied here because the essential factual and legal issues regarding the Settlement Class Members' claims are common, and relate to alleged standardized practice. *Talbott*, 191 F.R.D. at 105 ("Here, common questions predominate because of the standardized nature of [defendant's] conduct."). Nothing more is necessary to satisfy predominance.

### b. Superiority.

Finally, the Court must determine whether a class action is superior to other methods for the fair and efficient adjudication of this controversy under Rule 23(b)(3). The factors to be considered here in determining the superiority of the class mechanism are: (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in one forum; and (4) manageability.[7] *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997); *accord Newsome v. Up To Date Laundry, Inc.*, 219 F.R.D. 356, 365 (D. Md. 2004).

Efficiency is the primary focus in determining whether a class action is indeed the superior method of adjudicating the controversy. *Talbott*, 191 F.R.D. at 106. In examining these factors, it is proper for a court to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 (7th Cir. 1974).

In *Jeffreys*, for instance, the court found that because "the facts and issues involved are identical for all class members, class members have little incentive and few resources to pursue litigation on their own, the class members are dispersed over several states, and there are few manageability concerns, the class action is the best method of resolving the matter." 212 F.R.D.

---

[7] A trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23. *Amchem*, 521 U.S. at 620. Therefore, this criterion is not material to the Court's analysis in this posture.

at 323. The same is true here. Common issues predominate in the Settlement Class. Further, the individual claims of the members of the Settlement Class are small, thus providing little incentive for individual litigation, and the members of the Settlement Class have few resources to pursue litigation on their own. *See also Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997)).

A class action in this case is superior to other available methods for the fair and efficient adjudication of the case because a class resolution of the issues described above outweighs the difficulties in management of separate, individual claims and allows access to the courts for those who might not gain such access standing alone, particularly in light of the relatively small amount of the damage claims that would be available to individuals. Moreover, apart from the fact that the settlement allows a recovery of actual damages, certification permits individual claimants to opt-out and pursue their own actions separately if they believe they can recover more in an individual suit. Thus, both predominance and superiority are satisfied. Accordingly, the Court should conditionally certify the Settlement Class for settlement purposes.

### C. The Settlement Is Appropriate For Preliminary Approval.

The primary concern for the Court in reviewing a proposed class settlement is to ensure that the rights of class members have received sufficient consideration in settlement negotiations. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). At the preliminary approval stage, the Court must make a determination as to the fairness, reasonableness, and adequacy of the settlement terms. *See* FED. R. CIV. P. 23(e)(2); *see also* Manual for Complex Litigation (Fourth) ("MCL"), § 21.632 (4th ed. 2004).

The Fourth Circuit has bifurcated this analysis into consideration of the fairness of settlement negotiations and the adequacy of the consideration to the class. *In re Jiffy Lube*, 927 F.2d at 158-59. However, at the preliminary approval stage, the Court need only find that the settlement is within "the range of possible approval." *Horton v. Merrill Lynch, Pierce, Fenner & Smith,* 855 F. Supp. 825, 827 (E.D.N.C. 1994) (citing *In Re Mid-Atlantic Toyota Antitrust Litigation,* 564 F. Supp. 1379, 1384 (D. Md. 1983)). This settlement is, warranting approval.

### 1.     The Settlement Is Fair.

The Fourth Circuit has set forth the factors to be used in analyzing a class settlement for fairness: (1) the posture of the case when the proposed settlement was reached; (2) the extent of discovery conducted; (3) the circumstances surrounding the settlement negotiations; and (4) counsel's experience in the type of case at issue. *Jiffy Lube*, 927 F.2d at 158-59.

The proposed settlement in this case was reached only after an exchange of information in discovery regarding merits and class certification issues, including Defendants' responses to the targeted questions posed by Plaintiffs. These independently support the conclusion that the posture of the action and the discovery conducted is such that the proposed settlement is fair, reasonable, and adequate. This action has been appropriately litigated by the Parties and sufficient discovery has been obtained by both Plaintiffs and Defendants to assess the strength of their respective claims and defenses.

Further, the Parties have conducted arms'-length, contentious, and complicated negotiations through their Counsel. The Parties and the Commonwealth participated in a mediation session with a mediator on December 1, 2016. Courts have found that, where a settlement is the result of genuine arms'-length negotiations, there is a presumption that it is fair. *See*, *e.g.*, *City P'ship Co. v. Atlantic Acquisition Ltd. P'Ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Consequently, the circumstances surrounding the Parties' settlement negotiations support a finding that the settlement is fair.

Finally, Plaintiffs' counsel is highly experienced in consumer class action litigation, and they endorse the settlement as fair and adequate under the circumstances. Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See*, *e.g.*, *In re MicroStrategy*, 148 F. Supp. 2d at 665.

### 2.    The Settlement Terms Are Adequate And Reasonable.

In an analysis of the adequacy of a proposed settlement, the relevant factors to be considered may include: (1) the relative strength of the plaintiff's case on the merits; (2) any difficulties of proof or strong defenses the plaintiff would likely encounter if the case were to go to trial; (3) the expected duration and expense of additional litigation; (4) the solvency of the defendant and the probability of recovery on a litigated judgment; (5) the degree of opposition to the proposed settlement; (6) the posture of the case at the time settlement was proposed; (7) the extent of discovery that had been conducted; (8) the circumstances surrounding the settlement negotiations; and (9) the experience of counsel in the substantive area and class action litigation. *See In re Jiffy Lube*, 927 F.2d at 159.

While Plaintiffs' counsel firmly believes in the merits of Plaintiffs' claims, demonstrating that Virginia law applied to the loans at issue is not at all a certainty. Defendant Reddam also contested personal jurisdiction. Consequently, absent approval of the settlement, Plaintiffs will be put to challenging proofs, and all Parties face the prospect of a long and expensive litigation which will likely culminate in a trial on a class-wide basis and, thereafter, a lengthy appeal (not to mention the likelihood of a requested interlocutory appeal relating to class certification under Rule 23(f)).

If the Court grants preliminary approval, then the Class Members will receive notice carefully explaining the terms of the Settlement Agreement and informing them of their right to object or opt-out. Those Class Members who believe that their cases are even more valuable or

who have actual damage claims in excess of these expected ranges can opt-out and litigate those claims on an individual basis. While the degree of opposition to the Settlement Agreement cannot be known with certainty, the lack of any other competing class cases supports the strength of the settlement and the likelihood that it will stand. For these reasons, the opinion of all counsel involved is that the terms of the Settlement Agreement represent a fair, reasonable, and adequate resolution of the claims alleged.

**D.     The Proposed Notice and Notice Plan Satisfy Rule 23.**

Following preliminary approval, the class members must be given notice concerning the nature of the settlement and of their rights.  Rule 23(e)(1) requires that: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) sets forth the contents of a notice to be sent to members of a Rule 23(b)(3) class:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notice to the Settlement Class, which is attached to the Settlement Agreement, satisfies all of these requirements.

As set forth in the Settlement Agreement, to accomplish the contemplated class notice, Defendants will generate and provide a list of the Class Members from its business records. The Settlement Administrator will oversee the administration of the settlement and the notification to Class Members. The Settlement Administrator will be responsible for mailing the approved class action notices, after it has electronically checked and updated against the U.S.P.S. National Change of Address database. Any returned mail will also get a second level of review for re-mailing. Apart

from individual mailed notice, the Notice Plan also provides that Class Members will have access to a website and telephone service which will answer questions concerning the settlement through a live representative.

As the Manual for Complex Litigation recognizes, mail notice is the ideal method of informing class members of a class settlement where such members can be identified, while notice through an internet website is a supplemental means of providing notice. *See* MCL, § 21.311; *see also Henggeler v. Brumbaugh & Quandahl P.C., LLO*, 2013 U.S. Dist. LEXIS 155235, at *14–15 (D. Neb. Oct. 25, 2013) ("The court finds that the proposed notice is clearly designed to advise the class members of their rights. The Agreement provides for individual mailed notices to each of the class members. Individual notice is the best notice practicable.").

For these reasons, the proposed Notices and Notice Plan represent the "best notice that is practicable under the circumstances," and it therefore meets the notice requirements of Rule 23. Consequently, the Notices and Notice Plan should be approved by the Court.

## V.    CONCLUSION

The Settlement is an excellent result considering the contentiousness of the litigation and the lengthy mediation process. The terms of the Settlement, as well as the circumstances surrounding negotiations and its elimination of further costs caused by litigating this case through trial and appeal, satisfy the structures for preliminary approval.

WHEREFORE, Plaintiffs request that the Court issue an Order, substantially similar to the Proposed Order filed concurrently with this Motion, that: (1) grants preliminary approval to the Proposed Settlement; (2) approves of the Proposed Notice filed concurrently with this Motion; (3) orders that the Proposed Notice be immediately mailed to Class Members; (4) approves the appointment of Dahl Administration as the Settlement Administrator; (5) approves Defendants'

Class Action Fairness Act notice; (6) and sets the date of the Final Fairness Hearing at the Court's earliest availability, but no sooner than 120 days from the date of the granting of this Motion.

**Respectfully Submitted,**

**JAMES HAYES, et al.,**
*on behalf of themselves and others
similarly situated*,


BY:      _____/s/_____
        Leonard A. Bennett, Esq., VSB #37523
        Elizabeth W. Hanes, Esq., VSB #75574
        Craig C. Marchiando, Esq., VSB #89736
        **CONSUMER LITIGATION ASSOCIATES, P.C.**
        763 J. Clyde Morris Blvd, Suite 1A
        Newport News, VA 23601
        Telephone: (757) 930-3660
        Facsimile: (757) 930-3662
        Email:  lenbennett@clalegal.com
               elizabeth@clalegal.com
               craig@clalegal.com

        Kristi C. Kelly, Esq., VSB #72791
        Andrew J. Guzzo, Esq., VSB #82170
        **KELLY & CRANDALL, PLC**
        4084 University Drive, Suite 202A
        Fairfax, VA 22030
        Direct: 703-424-7576
        Fax: 703-591-0167
        Email: kkelly@kellyandcrandall.com
               aguzzo@kellyandcrandall.com

        Dale W. Pittman
        **LAW OFFICES OF DALE W. PITTMAN**
        112 W. Tabb St., #A
        Petersburg, VA 23803
        Tel: (804) 861-6000
        Fax: (804) 861-3368
        dale@pittmanlawoffice.com

        *Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of January, 2017, I filed a true and correct copy of the foregoing on the Court's CM/ECF System, which will send a notice of electronic filing to all counsel of record.

_____/s/ Kristi C. Kelly_____
Kristi C. Kelly, VSB #72791
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, Virginia 22030
(703) 424-7572 Telephone
(703) 591-9285 - Facsimile
E-mail:  kkelly@kellyandcrandall.com
*Counsel for Plaintiffs*